### In the Matter of MESA STEEL CORP., an Arizona corporation, Bankrupt.
### No. B–6317.

United States District Court
D. Arizona.
April 27, 1964.

**670**

Charles L. Hardy, Kramer, Roche, Burch & Streich, Phoenix, Ariz., for Ducommun Metals.

William J. Knudsen, Jr., Asst. U. S. Atty., Phoenix, Ariz., for the Director Internal Revenue Service.

Evans, Kitchel & Jenckes, Phoenix, Ariz., for Comstock.

Frederick K. Steiner, Jr., Snell & Wilmer, Phoenix, Ariz., for Short Bros.

J. S. Riggs, Phoenix, Ariz., for trustee.

EAST, District Judge.

On April 27, 1961:

Phil E. Davis and Velma P. Davis, husband and wife (Davises), were the owners of ranch property located in Pinal County, Arizona (Pinal County property);

The Davises were indebted to Ducommun in an amount of approximately $40,000 upon promissory note indebtedness, and to Short in the amount of $4,351.64 upon an open account; and

The Davises executed, acknowledged and delivered unto Ducommun their real estate mortgage of the Pinal County property to Ducommun as security for the payment of said promissory note indebtedness.

Davises' mortgage was forwarded in due course by the attorneys of Ducommun to the Pinal County Clerk for recording, via regular United States mail; however, through mischance, the mortgage never was received by the Clerk or recorded in the manner provided by the statutes of Arizona, and its present whereabouts are now unknown. Such fact of nonrecordation did not come to the actual knowledge of Ducommun until after the adjudication of the bankruptcy of Mesa herein (the United States Post Office at the county seat was robbed at about the time the due course of mail would have put the mailed mortgage in the Post Office, and it is inferred that the mortgage was destroyed and lost during the course of such robbery).

On May 1, 1961, Davises contracted to transfer the real property to Mesa, and in consideration therefor Mesa agreed to a purchase price " * * * which shall be paid as follows * * * (a) * * * issuance by Purchaser of 15,743 shares of * * * common stock * * * value equal to $31,486.00. (b) * * * The assumption by Purchaser of all existing liens and encumbrances on said property * * * which presently total $88,064.00. * * * "

"4. * * * Purchaser hereby agrees to assume outstanding and future indebtedness * * * which is or shall be-

come due on * * * the properties conveyed * * *" whereupon Mesa took possession of the property.

On or about July 1, 1961, Mesa entered into the Honeycutt contract of sale wherein Mesa agreed to sell and Honeycutt agreed to buy the real property at and for a purchase price in excess of $60,000, and the said contract of sale was placed in escrow, with original direction to the escrow for payment of the purchase price to Mesa, which instructions were thereafter supplemented by the unilateral direction of Mesa providing for the payment of Davises' indebtedness to Ducommun and Short from the proceeds of the escrow.

On or about November 1, 1961, Mesa was adjudicated a bankrupt, and shortly thereafter the Davises, individually, were adjudicated bankrupts.

The Davises never executed or delivered any deed of conveyance of the Pinal County property to Mesa; however, the trustee for Mesa did acquire a conveyance of the property from the trustee of the Davises' bankrupt estate, free of the Ducommun mortgage.

The trustee herein elected to accept and perform the Mesa-Honeycutt contract of sale, repudiate the supplemental escrow directions of payment to Mesa and Short, and now holds the proceeds of the Mesa-Honeycutt contract of sale, subject to the adjudication of the claims of Mesa, Short, and the Internal Revenue Service of the United States, which now claims tax liens against Mesa in the approximate amount of $8,700.00.

On April 16, 1963, the Referee entered his findings of fact, conclusions of law and order wherein:

1) The claim of Ducommun Metals and Supply Co. (Ducommun) in the amount of approximately $40,000.00, contended to be a secured realty mortgagee, was denied and the claim allowed as an unsecured claim;

2) The claim of Short Brothers Drilling Co. (Short), in the amount of $4,351.-64, was denied secured status and allowed as an unsecured claim;

3) The claim of Comstock Steel of Phoenix, Inc. (Comstock) was denied secured status (now moot); and

4) The claim of the Internal Revenue Service, in the amount of $8,753.23, allowed as a prior claim against a fund in the hands of the Trustee in the amount of $42,132.88, being proceeds of the real property sale known as the Mesa Steel Corporation, the Bankrupt (Mesa) to C. P. Honeycutt and Stevie A. Honeycutt (Honeycutt) contract of sale.

Ducommun and Short have each petitioned for a review of these findings, conclusions and order, and the Referee has filed his certificate on petition for review, together with the entire documentary and evidentiary record in support of his findings, conclusions and order.

The Court having heard counsel for the parties, considered their respective briefs, and examined the evidence and record before the Referee, now enters this memorandum decision.

While some of the Referee's findings of fact were unsupported by evidence, rejection of the mentioned conclusions of law of the Referee was due primarily to his erroneous characterization of the nature and tenor of the right, title and interest of the Davises, Ducommun, and Mesa, respectively, in and to the real property at the time of Mesa's adjudication. The Referee in his opinion misreads Shreeve v. Greer, 65 Ariz. 35, 173 P.2d 641 (Ariz.1946), which he cites as authority for his opinion that:

"Since Mesa * * * had paid the full consideration to Davises for the said * * * real property * * * Mesa * * * owned the full legal title to said property and was entitled to a deed thereto from the Davises, who at said time owned no interest whatsoever in said property."

Shreeve in reality announces quite another, yet universal rule of equity, namely:

"The vendee is looked upon and treated as the owner of the land,

and, although the vendor remains owner of the legal estate, he *holds it as a naked trustee* for the vendee, to whom all the *beneficial interest has passed.*" [Italics supplied.]

In other words, a real property vendee, upon *full and complete performance* of his covenants of purchase, holds the complete beneficial interests or equity that will specifically enforce a conveyance of the legal title with the vendor's covenants of sale; however, at the time of adjudication of bankruptcy, Mesa *had not fully and completely performed* the covenants of purchase; namely, to assume and agree to pay the indebtedness of the Davises to Ducommun as evidenced by the promissory note and secured by the valid mortgage. Neither the Davises nor their trustee in bankruptcy were obliged to or could be compelled at law or in equity to convey the legal title of the real property to Mesa free of the indebtedness and mortgage lien held by Ducommun, as the Davises, under universal law, held the legal title of the real property as security for the full performance of Mesa's covenants to pay the purchase price, and particularly to assume and pay the indebtedness of the Davises to Ducommun which encumbered the real property. It follows that as long as Mesa had not performed its covenants by assuming and paying the indebtedness secured by the Ducommun mortgage, the Davis-Mesa contract of sale was not fully performed and remained purely executory.

"An executory contract for the sale of land, so long as it remains executory, conveys in law no title to the land. The vendor retains the legal title *and the rights incident thereto* except insofar as he has parted therewith by the terms of the contract." 55 Am.Jur. Vendor and Vendee, § 355–6, pp. 781–2.

Accordingly, under such an executory contract, Mesa's beneficial ownership or equity in the real property was sufficient to specifically enforce a conveyance of legal title thereto from the Davises, but subject to the mortgage held by Ducommun and with an assumption to pay, no more nor no less. The continuing and executory nature of the vendee's obligation under these circumstances is well analyzed in Dobkin v. Landsberg, 273 Pa. 174, 116 A. 814:

"[W]here a portion of the price is represented by an obligation on the part of the vendee, to indemnify the vendor against an existing debt on the property * * *. The net result of all our cases is that the law * * * fixes the one who has the property with an obligation to indemnify his vendor against loss from existing mortgages; this obligation arises as soon as the vendee takes any character of possession under the contract of purchase * * * and continues at least till delivery of the deed of conveyance."

Since the Davises' legal title to the real property (vendor's lien to secure payment of purchase price) was a matter of record at the time of Mesa's adjudication, the trustee takes Mesa's right, title and equity in the real property, with notice of Davises' outstanding legal title with all of the lawful incidents thereto, his claim of an ideal creditor's status under § 70, sub. c of the Bankruptcy Act avails him nothing as against the recorded legal title in the Davises.

At common law a debtor's equitable ownership in real property cannot be attached. 7 C.J.S. Attachment § 81, p. 256; 33 C.J.S. Executions § 40, p. 172.

Furthermore, and in addition to the valid unrecorded mortgage lien, Ducommun holds through the Davises and as an incident to their legal title and the terms of the Mesa contract of sale, a vendor's lien upon the property as security for the payment of the Davises' promissory note indebtedness to Ducommun.

"And where the agreement of the purchaser is to assume and pay as a part of the consideration an indebtedness secured by a mortgage on the land or a part of the land conveyed, the mortgagee has been permitted to enforce a vendor's lien on the entire tract for the amount of his

claim." Alabama-Florida Co. v. Mays, 111 Fla. 100, 149 So. 61, 91 A.L.R. 139; see also 55 Am.Jur. Vendor and Vendee, § 482, p. 881, n. 14–17, inclusive.

When the trustee succeeded to Mesa's right, title and equity to the Pinal County real property upon adjudication, he found Mesa to be the beneficial owner under an executory contract of purchase from Davises, who held the record legal title, with right of subrogation in Ducommun, as security for the payment of the Davises' indebtedness to Ducommun; and the vendor of that beneficial ownership under an executory contract of sale to the Honeycutts, calling for payment of the purchase price upon Mesa's covenant to convey legal title free of encumbrance.

At this juncture, the trustee had the option to assume or repudiate the Davis-Mesa executory contract as well as the Mesa-Honeycutt executory contract, and since he did elect to assume such of these executory contracts, he is bound to fully perform all of Mesa's covenants under each.

> "The price for securing the potential margin of benefit to the estate is high. It is nothing short of complete mutuality, that is assumption by the estate of the bankrupt's liabilities, *not as a matter of granting a distributive share, but by performance in full.*" [Emphasis added.] 4 Collier on Bankruptcy, 1352 (1962).

I conclude that the trustee, having accepted the benefits of each of the contracts, must perform each of the covenants on Mesa's part to be performed, and stand as a conduit for the passage of the amount of principal and interest due upon the Davises' promissory note to Ducommun from the fund represented by the Honeycutt purchase price.

I further conclude that Short is not entitled to similar consideration on its indebtedness from the Davises, for the reason that Short's indebtedness was not an "existing lien and encumbrance" nor an "indebtedness * * * on * * *

the properties conveyed," and was not within Mesa's covenant "to assume outstanding and future indebtedness."

 Turning now to the query of what status of creditorship Short acquired by reason of the escrow instructions referred to in findings of fact 17, under the trustee's election to assume the Mesa-Honeycutt executory contract. Short relies upon In Re Swindle, 188 F. Supp. 601 (D.Or.1960) as authority for its claim of secured status under the escrow. At first blush Swindle is similar to the case at hand in that it concerns supplemental escrow instructions modifying the distribution of proceeds coming into the hands of the escrow; however, upon perusal, it appears that in Swindle the escrow agent was also one of the distributees of the proceeds under the supplemental instructions. Therefore, the escrow agent became possessed of both (1) a power over, and (2) an interest in the subject matter of the escrow agreement. Judge Kilkenny held that such a combination of (1) power, and (2) interest in the agreement, made the agency and direction to pay irrevocable, and, accordingly, binding on the vendor's trustee in bankruptcy. See also 3 Am.Jur. 2d § 65 (1962). It is manifest that here the Mesa-Honeycutt escrow agreement and supplemental orders did not confer a power coupled with an interest on the escrow agent, Phoenix Title and Trust. Consequently, the unilateral order of Mesa to pay Short, being supplemental to the escrow agreement providing original distribution of proceeds, was lawfully revocable by the trustee in bankruptcy standing in the shoes of Mesa, and this the trustee has done.

The absence of additional consideration from Short for the supplemental order to pay removes the outstanding order to pay from the category of binding contract and places performance of the order to pay from a secured fund within the category of a voidable preference.

I finally conclude:

(1) Ducommun is entitled to be given the status of a prior secured creditor to

674

the Honeycutt purchase price fund to the extent of its claim in full;

(2) The Internal Revenue Service claim is allowed secured-creditor status to the fund, secondary to Ducommun;

(3) The claim of Short is to remain an unsecured claim; and

The order of the Referee should be modified accordingly.

Counsel for Ducommun should prepare, serve the parties and submit proposed findings, conclusions and order. In the event the parties cannot agree as to the form of the findings, conclusions, and order, the Court fixes June 12, 1964 at 9:30 A.M. as tentative time for settlement thereof.