In the Matter of Joseph Delbert SWINDLE, Sr., Bankrupt.

No. B–40513.

United States District Court
D. Oregon.

Feb. 18, 1960.

602

Burke, Bounds & Courson, Portland, Or., for petitioner.

KILKENNY, District Judge.

The following questions are presented on the certificate of review obtained by Commerce Investment, Inc. on Referee's order entered October 30, 1959, to wit:

(1) Whether the Referee erred in holding that the Bankruptcy Court had summary jurisdiction over Commerce Investment, Inc. to determine this controversy.

(2) Whether the Referee erred in finding that Commerce Investment, Inc., in handling the closing of the sale of Lot 1 after bankruptcy, should be considered the agent of the trustee of the bankrupt's estate.

(3) Whether the Referee erred in finding that an assumption by the trustee of the earnest money contract for the sale of Lot 1 did not result in an assumption also of bankrupt's letter of instructions to Commerce Investment, Inc., in which Commerce Investment Inc. was authorized to pay out of the net proceeds of the sale the balance due on the note and unrecorded mortgage to Commerce Building, Inc.

(4) Whether the Referee erred in holding that Commerce Investment, Inc. has no right to set off the indebtedness of the bankrupt on the note and unrecorded mortgage to Commerce Building, Inc. against the obligation of Commerce Investment, Inc. to turn over the proceeds from the sale of Lot 1 to the trustee in the bankruptcy proceeding.

Commerce Investment, Inc., herein called claimant, and Commerce Building, Inc., herein called Building, have been and now are corporations existing under the laws of Oregon. The stockholders, directors and officers of both corporations have been and now are identical. On April 17, 1956, Building, for a consideration of $2,750, executed and delivered to the bankrupt and his wife a deed to the real property herein mentioned. On the same day, the bankrupt and his wife executed and delivered to Building their promissory note bearing the same date in the said sum of $2,750 payable upon sale of the property on or before April 1, 1957, with interest at 6%. Said note has not been endorsed by Building. On April 17, 1956, bankrupt and his wife executed and delivered to Building a mortgage on said real property to secure payment of said purchase money note. The mortgage was not recorded until April 23, 1957. On May 28, 1956, claimant made a construction loan in the sum of $13,500 to the bankrupt and his wife to enable bankrupt to construct a residence on said property. On the same date bankrupt and his wife executed and delivered to claimant their promissory note bearing the same date in the sum of $13,500 due and payable on or before January 28, 1957, the unpaid balance on said note on April 17, 1957 being $13,866.85. On the same date bankrupt and his wife gave claimant a mortgage on said property to secure payment of said note, which mortgage was recorded on May 31, 1956. On March 23, 1957, bankrupt entered into an earnest money receipt agreement with Paul Kinnersley and wife in which the bankrupt agreed to sell and the buyers agreed to buy said real property for $23,500. Buyers paid claimant $1,000 earnest money on execution. By the terms of said agreement bankrupt agreed to pay claimant a commission of $1,175. This earnest money receipt contained certain specific statements as to the distribu-

tion of the sales price. On April 11, 1957, bankrupt and his wife executed a deed conveying said property to said buyers and on the same day the bankrupt and his wife delivered said deed to the claimant with a letter of instructions designating the claimant as escrow agent "to deliver and use this deed when you have for credit to our account the sum of $23,500.00, being the full purchase price of the above described property plus prorations of existing fire insurance and 1956/57 taxes as of May 1, 1957." Under such document claimant was further directed to make certain payments from said amount, including (1) payment of the balance of the construction loan note in the sum of $13,803.36, plus interest to date, (2) payment of the balance of the purchase money note in the said amount of $2,350, plus interest, and (3) claimant's commission in the amount of $1,175, and (4) discount fee for buyers' loan in the amount of $462.50. Bankrupt and his wife then directed in said communication that, "the balance of the funds are to be distributed to us. It is our understanding these funds will be available when title to subject property vests in the name of Paul M. Kinnersley, et ux. and your mortgage appears as a first lien."

On April 12, 1957, claimant agreed to make the buyers a loan in the sum of $18,500 to enable buyers to complete financing the purchase of said property and on said date the buyers gave claimant their note dated that date in the amount of $18,500 in connection with the loan to be made by claimant to buyers. On the same date buyers executed and delivered to claimant a mortgage on said real property to secure payment of their note. Again, on said date, buyers executed a closing statement showing the amount of the purchase price and charges, including a proration of taxes and insurance, the amount of earnest money, FHA mortgage loan and a balance of $4,697.82.

On April 17, 1957, bankrupt filed a petition in bankruptcy and was adjudicated a bankrupt. Thereafter, Alexander T. Bishop was appointed trustee of the bankrupt's estate. On April 22, 1957, the buyers deposited with the claimant said sum of $4,697.82, of which sum $4,000 was on account of the purchase price, $67.09 on account of the buyers' prorata share of the taxes and pre-paid insurance premium, and $630.73 was on account of loan costs and reserves. The buyers took actual possession of the property on May 1, 1957, the date mentioned in the purchase money receipt.

On May 22, 1957, the trustee filed a petition for an order to show cause with reference to the sale of said real property and served a copy of such order upon all the claimants, including Building. Claimant and Building filed motions to dismiss the trustee's petition on the ground, among others, that the court lacked jurisdiction to proceed in a summary manner. Building withdrew its motion to dismiss and its objection to summary jurisdiction at the time of the hearing. On July 22, 1957, the court entered an order with reference to the property involved directing, among other things,

"that the trustee be and he hereby is authorized and directed to complete the sale of the real property described as Lot 1, Block 6, Woodrow Wilson Park, City of Portland, County of Multnomah and State of Oregon to Paul M. Kinnersley and Maxine L. Kinnersley, his wife, as proposed by and as provided by the terms of the earnest money receipt agreement for the sum of $23,500.00 and to execute and deliver a bargain and sale deed of said real property to the said Kinnersleys, and that said sale be made free and clear of any and all liens and claims to or against said real property."

The order further provided for the distribution of the proceeds, but made no provision for the payment of the said sum of $2,350 plus interest, owing to the Building on the said note and unrecorded mortgage, which was the original purchase price of the property.

 I am of the opinion that the original purchase money contract of March 23, 1957, was modified by the additional escrow instructions of April 12, 1957, in which the escrow agent, the claimant, was specifically instructed by the bankrupt and his wife to deduct from the sales price of the property, said sum of $2,350 plus interest, before delivering the balance of the proceeds to the bankrupt. This additional burden was assumed by the claimant as the escrow agent. The claimant accepted, for escrow purposes, the warranty deed which is mentioned in the supplemental escrow instructions. The construction of contracts is generally determined by the law of the place of making. Jamieson v. Potts, 55 Or. 292, 105 P. 93, 25 L.R.A., N.S., 24; Sterrett v. Stoddard Lumber Co., 150 Or. 491, 46 P.2d 1023; Brace v. Gauger-Korsmo Construction Co., 8 Cir., 1929, 36 F.2d 661, certiorari denied 1930, 281 U.S. 738, 50 S.Ct. 333, 74 L.Ed. 1153. There can be no doubt but that the parties intended to modify the original escrow agreement by the supplemental contract. The intention of the parties must therefore control. ORS[1] 42.240 and ORS 42.220, 42.210. Biersdorf v. Putnam, 181 Or. 522, 182 P.2d 992. All of the parties considered the claimant as the escrow agent for distribution of the funds. The buyers, as late as April 22, 1957, deposited with the claimant the said sum of $4,697.82. The construction given to the contract by the makers thereof is important and the courts will not interfere with the practical construction placed thereon by the parties. Lease v. Corvallis Sand & Gravel Co., 9 Cir., 1950, 185 F.2d 570; Hugo V. Loewi, Inc. v. Geschwill, 9 Cir., 1951, 186 F.2d 849, rehearing denied 188 F.2d 366; Wood v. Davin, 122 Or. 74, 257 P. 690; Kontz v. B. P. John Furniture Corporation, 167 Or. 187, 115 P.2d 319.

 Where the original agreement is changed with the acquiescence of all of the parties, the original contract is abrogated and changed to the extent of the modification. Good v. Smith, 44 Or. 578, 76 P. 354; Hayden v. City of Astoria, 74 Or. 525, 145 P. 1072. Therefore, at the time of the adjudication in bankruptcy, the supplemental instructions were an essential and binding part of the contract between the parties. If bankruptcy had not intervened, there is no doubt but that the claimant was under a direct obligation to pay the amount of the note and the interest to Building, on receipt of the funds. The appointment of the claimant as agent in this case was no ordinary appointment. This was an appointment coupled with an interest and as such, was irrevocable. Phez Co. v. Salem Fruit Union, 103 Or. 514, 201 P. 222, 205 P. 970, 25 A.L.R. 1090; Restatement of the Law, Agency, 2d, § 138; 2 Am.Jur., p. 66, §§ 81, 82. Thus, we have a complete irrevocable contract consisting of the original earnest money agreement and the supplemental escrow instructions. The trustee, of course, was under no obligation to complete this executory contract. Under § 70, Subdivision b of the Act, [11 U.S.C.A. § 110, sub. b,] the trustee is given the right to adopt or reject such a contract. However, he must do one or the other. If he deems the contract to possess no equity for the estate, he rejects it as burdensome. If, on the other hand, he concludes that the executory contract does have an equity for the estate, he adopts it. We quote from In re Italian Cook Oil Corporation, 3 Cir., 1951, 190 F.2d 994, 997:

"* * * The trustee, however, may not blow hot and cold. If he accepts the contract he accepts it cum onere. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other."

 In conclusion, I am of the opinion that the Referee had jurisdiction to proceed in a summary manner and to direct a sale of the property pursuant to the terms and conditions of the executory contract consisting of the original ear-

---

1. Oregon Revised Statutes.

nest money receipt and said supplemental instructions. The Referee had no power or authority to accept the benefits of such contract and reject its burdens. The order of the Referee dated the 30th day of October, 1959, should be modified so as to direct the claimant to deduct for the account of Building the additional sum of $2,350, plus interest at the rate of 6% per annum from the 1st day of April, 1956, until paid, the balance to be paid over to the trustee in bankruptcy.

In view of this holding, the other questions raised on the certificate of review are moot. Otherwise, the order of the Referee is affirmed. Counsel for claimant may draft an appropriate order.