**In re Kenneth Henry OHNING, Karen Jean Ohning, Debtors.**

**Kenneth Henry OHNING, Karen Jean Ohning, Plaintiffs,**

**v.**

**SCHNEIDER NATIONAL TRANSCONTINENTAL, INC., Defendant.**

**Bankruptcy No. 85–10371.**
**Adv. No. 85–1074.**

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

Feb. 14, 1986.

---

**3.** 161 Cong.Rec., S 17409 (1978), reprinted in 3 Collier (Appendix) On Bankruptcy at X–20 (15th   ed. 1985).

Ronald L. Sowers, Fort Wayne, Ind., for plaintiffs.

Jeffery O. Meunier, Carmel, Ind., for defendant.

## ORDER

ROBERT K. RODIBAUGH, Chief Judge.

Kenneth Henry Ohning and Karen Jean Ohning are chapter 13 debtors who have brought an adversary proceeding due to Schneider National Transcontinental, Inc.'s (Schneider) collection of a pre-petition debt from property of the estate which consists of Ohnings' post-petition earnings. The matter is before the court on cross motions for summary judgment; it was taken under advisement October 22, 1985.

A motion for summary judgment may be granted only when there is no genuine issue as to any material fact and where the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court may consider the pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits. Bankruptcy rule 7056 makes rule 56 of the Federal Rules of Civil Procedure applicable in adversary proceedings, such as the case at bar, under the bankruptcy code.

> The very mission of the summary judgment procedures is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.

Fed.R.Civ.P. 56(e) advisory committee comment.

> Rule 56 should be cautiously invoked to the end that parties may always be afforded a trial where there is a bona fide dispute of facts between them.

*Associates Press v. United States,* 326 U.S. 1, 6, 65 S.Ct. 1416, 1418, 89 L.Ed. 2013 (1945).

The court hearing a motion for summary judgment cannot try issues of fact; it can only determine whether there are issues of fact to be tried. *In re Iota Industries, Inc.,* 33 B.R. 49, 50 (Bkrtcy.S.D.N.Y. 1983). The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact. *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.1983). Any reasonable doubt regarding the existence of disputed facts

should be resolved against the movant. *Fitzsimmons v. Best,* 528 F.2d 692, 694 (7th Cir.1976). Any factual inferences to be drawn from the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion. *In re Oslager,* 46 B.R. 58, 60, 11 C.B.C.2d 1427, B.L.D. § 70,215 (Bkrtcy.M.D.Pa.1985). The keys to the concept of a summary judgment are the words "material and genuine." To prevent the entry of a summary judgment there must be a legitimate, bona fide dispute as to a fact which affects the relative rights and obligations of the parties. A dispute on a collateral fact will not forestall judgment.

Furthermore, in those instances in which a motion for summary judgment is supported by affidavits, the party in opposition must file a response setting forth specific facts showing that there is a genuine issue as to a material fact. If a response is not forthcoming, a summary judgment shall be entered if appropriate. *In re Manchester Lakes Associates,* 47 B.R. 798, 800, B.L.D. § 70,331 (Bkrtcy.E.D.Va.1985).

The court has carefully examined the pleadings and finds that summary judgment is an appropriate method to narrow the issues in the case at bar. There is no dispute as to the material facts, only as to the legal conclusions to be drawn from them.

Schneider is a trucking company with its center of operations in Green Bay, Wisconsin. Schneider keeps a computerized 'truck account' for each of its independent drivers. Each run assigned to a driver is separately accounted for on a weekly summary. Schneider advances funds for fuel and other expenses which the driver incurs. These advances appear on the statement as debts which offset the driver's compensation for each run; a net figure for each run is carried forward. At the end of each weekly accounting period, the net amounts from each run are totaled, and any outstanding settlement items are subtracted. If any credit balance remains it is then sent to the driver. Although not submitted to the court, this opinion assumes that the contract provides for the recoupment of any such advances.

The Ohnings are interstate truckers who have a truck account with Schneider. They suffered a series of set backs due to factors not relevant here. Their truck account had developed a negative balance of approximately $8,000.00 when they sought chapter 13 relief on May 15, 1985. Their chapter 13 plan will, if confirmed, provide for the Schneider debt. 11 U.S.C. § 1325.

Two factors relevant to this matter came into effect on May 15, 1985. First, a bankruptcy estate was created which consists of every legal or equitable interest in property which the debtors owned, or later acquired, including any post-petition earnings. 11 U.S.C. §§ 541, 1306. Second, an automatic stay took effect which barred any action by anyone to enforce any pre-petition claim against the debtors or the property of the estate. 11 U.S.C. § 362.[1]

Schneider received actual contemporaneous notice of the Ohnings' bankruptcy case. Over the course of the next several months Schneider, over the vehement objection of the Ohnings, proceeded to apply all of the Ohnings' post-petition earnings to the outstanding pre-petition debt. Schneider took no steps to maintain the status quo or to seek permission of the court to withhold the earnings. It is clear that Schneider has intentionally violated the automatic stay with respect to property of the estate unless they have properly exercised a common law recoupment which is exempt from the stay.

■■■ Schneider has not cited any authority which would allow it to execute even a valid recoupment from property of the estate. The holders of valid set-offs may not execute them without obtaining relief from the automatic stay. *In re Pea-*

---

1. These sections of the code contain certain technical exceptions which are not applicable to the situation at bar.

*body*, 51 B.R. 157 (Bkrtcy.D.Me.1985). No argument has been made that would justify exempting a recoupment from 11 U.S.C. § 362. Any action by a creditor, such as Schneider, to collect a pre-petition debt, such as the negative balance in the Ohnings' truck account, from property of the estate, such as Ohnings' post-petition earnings, is a paradigm example of the activity specifically prohibited by the automatic stay. The Ohnings have established an intentional violation of the automatic stay. The pleadings, in their current procedural context, will not permit a proper determination of what damages, sanctions or award of attorney fees may be appropriate. Schneider's motion for summary judgment requesting that it be found to have not violated the automatic stay is DENIED. Ohnings' motion for summary judgment requesting that Schneider be found to have violated the automatic stay is GRANTED as to liability.

The Ohnings have also requested an injunction to prohibit Schneider from taking any retaliatory action as a result of these matters. To the extent that such an injunction would be redundant with 11 U.S.C. § 525, it is not clear what purpose it would serve. Since neither party has addressed the injunction in their summary judgment motion, summary judgment is DENIED on this issue.

The substantive issue raised by this adversary proceeding is whether Schneider executed a valid recoupment. At common law a defendant could withhold what he owed a plaintiff to the extent that it was equitable to do so, and the obligations both arose from the transaction which was the basis of plaintiff's cause of action. A set off, however, arises out of a transaction extrinsic to plaintiff's cause of action. It is not clear what significance this common law distinction has to the issue before the court. *Lee v. Schweiker*, 739 F.2d 870 (3rd Cir.1984).

The doctrine of recoupment survives bankruptcy.

The rule of recoupment in bankruptcy derives from the rule that the trustee takes the bankrupt's property subject to the equities therein.
*In re Monongahela Rye Liquors*, 141 F.2d 864, 869 (3d Cir.1944).

■ The key to understanding the doctrine of recoupment in bankruptcy is the term "property." The bankruptcy estate takes the property of the debtor on the date of the petition as it exists on that date. If certain property is subject to an unavoidable security interest or an equitable interest, then that equitable interest may be respected. *Matter of Gullifor*, 47 B.R. 450 (E.D.Mich.1985). The doctrine of recoupment, as it survives in bankruptcy, only applies where a debtor's pre-petition work product produces post-petition revenue which is not dependent upon the debtor's post-petition efforts. A defendant may not, consistent with the policy of the Bankruptcy Code, withhold that which is due a debtor for post-petition efforts to satisfy a pre-petition debt. *In re Sherman*, 627 F.2d 594 (2d. Cir.1980); *Waldschmidt v. CBS, Inc.*, 14 B.R. 309 (Bkrtcy.D.C. M.D.Tn.1981); *In re Dartmouth House Nursing Home, Inc.*, 24 B.R. 256 (Bkrtcy. D.Mass.1982) (appeal pending).

■ While the bankruptcy estate takes the debtor's property subject to certain creditors, the debtor's future earnings are protected to provide the debtor's fresh start. *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Several examples will illuminate the application of this doctrine in bankruptcy.

Singer George Jones made several records for which CBS, Inc., had advanced Jones royalties before he filed bankruptcy. The district court held that the post-petition royalties resulting from the pre-petition work product could be withheld by CBS, Inc., until the advancement had been recovered. The post-petition royalties did not relate to any post-petition effort by Jones; they were based solely on the pre-petition work product which he had created. *Waldschmidt v. CBS, Inc.*, 14 B.R. 309.

Insurance salesmen create a similar property interest through their work product when they sell a life insurance policy. The salesman receives an initial commis-

sion and then another commission each time the policyholder renews the policy. The insurance companies allow salesmen to draw advances against those future commissions. When an insurance salesman files bankruptcy and has such advances outstanding, the insurance company is allowed to withhold the future renewal commissions on the pre-petition policies until the advance is returned. *In re Sherman*, 627 F.2d 594, (2d Cir.1980).

The recoupment in both the insurance policy and the record situation is limited to the post-petition revenue generated by the pre-petition work product. The cases where the government is a party reach less consistent results. In those situations where a nursing home has received an overpayment for its Medicaid residents prior to filing a chapter 11 bankruptcy reorganization, there is a split of authority. The correct analysis determines whether the debtor has produced any pre-petition work product and if not holds that the government may not withhold post-petition earnings for post-petition efforts to repay the pre-petition debt created by the overpayment. See, *In re Dartmouth House Nursing Home, Inc.*, 24 B.R. 256 (Bkrtcy. D.Mass.1982) (appeal pending) which the court hereby adopts and approves. A second line of cases enforces the various terms of the contract between the government and the pre-petition entity which was the debtor's predecessor in interest ignoring both the congressional intent and the terms of the Bankruptcy Code. See generally, *In re Yonkers Hamilton Sanitarium*, 22 B.R. 427 (Bkrtcy.S.D.N.Y.1982).

Those cases in which a social security recipient has received an overpayment before filing bankruptcy have uniformly held that the government could not recover the overpayment from the debtor's post-petition social security payments. See generally, *Lee v. Schweiker*, 739 F.2d 870 (3d Cir.1984). While these cases are consistent with *Dartmouth Housing Nursing Home, Inc.*, 24 B.R. 256, and the insurance policy and record royalty situations, they reach the same result under an 'entitlement' theory and are therefore not constructive to the analysis of the issue at bar.

In the case at bar Schneider could only recoup the pre-petition debt from Ohnings' pre-petition work product. Schneider should have closed Ohnings' existing truck account as of the date of the petition and opened a new account for post-petition activity.

█ The undisputed material facts and factual inferences drawn in the light most favorable to Schneider establish that Schneider withheld Ohnings' post-petition personal service earnings and applied them to a pre-petition debt. Wherefore, Schneider's motion for summary judgment requesting that it be found to have exercised a valid common law recoupment is DENIED; Ohnings' cross motion for summary judgment is GRANTED as to liability. The facts necessary to determine the amount of funds to be returned and the appropriate sanctions, damages and attorney fees, if any, which may be appropriate to award to the Ohnings are not appropriate for summary judgment. This matter is set for pre-trial conference on March 18, 1986, at 4:30 p.m., in Room 201, U.S. Courthouse, 204 South Main Street, South Bend, Indiana.

SO ORDERED.