**In re Bruce HEAFITZ, Debtor.**

**Carl BURLEY, Trustee of the Reorganization Trust, Plaintiff,**

v.

**AMERICAN GAS & OIL INVESTORS, First Reserve Capital Management Corporation and First Reserve Corporation, Defendants.**

**Bankruptcy No. 83 B 11407 (CB). Adv. No. 86–5790A.**

United States Bankruptcy Court, S.D. New York.

Feb. 11, 1988.

Stroock & Stroock & Lavan, New York City, for trustee; Melvin A. Brosterman, Lauren G. Klein, Sherry Millman, of counsel.

Sullivan & Cromwell, New York City, for American Gas & Oil Investors; Hyman L. Schaffer, of counsel.

Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for First Reserve Capital Management Corp. and First Reserve Corp.; David S. Elkind, of counsel.

## OPINION AND DECISION ON MOTIONS FOR SUMMARY JUDGMENT

CORNELIUS BLACKSHEAR, Bankruptcy Judge.

On December 16, 1987, plaintiff's and defendants' motions for summary judgment pursuant to Bankruptcy Rule 7056 were heard before this court. Plaintiff Carl Burley, Trustee of the Reorganization Trust ("Plaintiff" or "Trustee") of the estate of debtor Bruce Heafitz ("Heafitz") moved for summary judgment against defendants American Gas & Oil Investors ("AmGO"), First Reserve Capital Management Corporation ("First Reserve Capital") and First Reserve Corporation ("First Reserve"). Plaintiff requests this court to direct a turnover to the Trustee of distributions allegedly owed to Heafitz but withheld by defendants and to hold defendants in contempt of court for violation of the automatic stay. December 16, 1987 Transcript ("Tr.") at 6. Additionally, plaintiff requests that its attorney's fees, costs of the above proceeding and punitive damages of $500,000 be awarded against defendants. See Plaintiff's Reply Memorandum in Opposition to Defendant's Motion for Summary Judgment, dated November 12, 1987, at 3.

Defendants, in turn, have moved for summary judgment against plaintiff on the basis that neither Heafitz nor the Trustee is entitled to partnership distribution until Heafitz satisfies conditions set forth in the

AmGO Agreement. They also assert that the Articles of Limited Partnership ("Partnership Agreement") and promissory notes executed by Heafitz thereunder constitute an executory contract between defendants and Heafitz which was assumed and allegedly breached by plaintiff. Defendants also move this court for an order pursuant to Rule 7056 to determine that AmGO has a valid lien on the limited partnership interest held by Heafitz and distributions with respect thereof and otherwise granting defendants summary judgment dismissing the complaint on the ground that it fails to state a claim upon which relief may be granted. Defendant's Notice of Motion, Tr. 9–20.

### Facts

Pursuant to an Agreement and Articles of Limited Partnership ("Partnership Agreement"), AmGO was organized in June 1981 as a limited partnership having First Reserve Capital as its Managing General Partner, Heafitz as its Special General Partner, and First Boston Corporation as Special Limited Partner. Hill Affidavit dated August 19, 1987, ¶ 2 ("Hill Aff.") In accordance with Article II of the Partnership Agreement, the Managing and Special General Partners are considered limited partners for most purposes. They are not, however, included in the group of approximately 42 investor limited partners of AmGO who made capital contributions to the partnership of approximately $144,330,-000. Hill Aff. ¶ 4. Heafitz did subscribe to a 2% limited partnership interest but such subscription was subject to terms significantly different from those of the 42 investor limited partners. Instead of requiring Heafitz to make any immediate cash contribution to the partnership, Heafitz executed five promissory notes which obligated him to pay to AmGO the subscription price of $2,886,597.93 for a 2% limited partnership. It also obligated him to pay interest thereon at the prevailing rate of Citibank, N.A. Pursuant to Article V, Section 5.6 of the Partnership Agreement ("Section 5.6"), Heafitz' capital contribution to the Partnership and the interest which accrued on the unpaid portion thereon were to be paid from Heafitz' limited partnership distributions. Further, as provided by Section 5.6 "any amount of any quarterly distribution not required to pay accrued but unpaid *interest* on and due but unpaid *principal* of the notes shall be paid to the General Partners." In addition, in accordance with Section 5.6, "principal of the notes and any accrued but unpaid interest thereon shall be payable in five equal installments at the end of each of the Partnership's fiscal years, commencing with the fiscal year ending June 30, 1986." Interest on Heafitz's obligations is payable on June 30 and December 31 of each year commencing December 31, 1981. *See* Section 5.6 of Partnership Agreement. The five promissory notes executed by Heafitz essentially incorporated and mirrored Section 5.6 of the Partnership Agreement as stated above.

In addition to the above obligations, Heafitz was obligated to refrain from taking part in AmGO's business (Section 12.1) and from assigning his partnership interest without the proper consent (Section 13.1). AmGO and First Reserve Capital were obligated, among other things, to manage and administer the assets and affairs of the partnership (Section 3.1 and Article IV), to make investments of partnership assets and the funds provided by the partners, to allocate and make distributions where appropriate (Article VIII) and to furnish audited financial statements (Section 10.5).

On or about September 29, 1983, an involuntary petition was filed against Heafitz pursuant to chapter 11 of the Bankruptcy Code. Thereafter, on January 17, 1984, Heafitz consented to relief under chapter 11. An order for relief was entered by this court on January 19, 1984.

Defendants assert that on the date of the involuntary petition, Heafitz's due and unpaid interest charges alone of $873,011.75 exceeded his distributive share by more than $625,541.75. Hill Aff., *Exhibit* D. Defendants further assert that Heafitz failed to pay the first two of the five installments respectively on June 30, 1986 and June 30, 1987 as required by the Partnership Agreement and the promissory

notes totaling $1,638,437.54 (of which $1,154,639.17 is principal). As of June 30, 1987, Heafitz's currently due and unpaid obligation for the first two installments owed to AmGO for principal alone exceed his aggregate distributive share since the inception of AmGO ($549,660) by more than $600,000. *See* Hill Aff. ¶ 11, ¶ 12. Defendants further assert that Heafitz presently has a capital account balance of negative $3,209,949.68, computed by subtracting the unpaid principal amount due ($2,886,597.93) plus interest due as of September 27, 1983 ($873,011.75) from the aggregate distribution ($549,660). *Id.*[1]

In November 1981, Heafitz and his creditors proposed a plan which was thereafter confirmed by this court. Said plan explicitly provided that the Estate assumed all executory contracts not previously rejected by the court. *See* Plan, Article V, p. 15.

### Discussion

In deciding a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that such party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c), made applicable by rule 7056 of the Bankruptcy Rules. In the instant case, we are convinced that there is no dispute as to material facts, only as to the legal conclusions to be drawn from them. *See In re Ohning,* 57 B.R. 714 (Bankr.N.D.Ind.1986).

■ Before addressing the substantive legal issues before this court, we find that First Reserve Capital and First Reserve were improperly named as defendants in plaintiff's complaint. In New York, an individual partner is liable for a partnership obligation only if the partnership property is insufficient to pay the firm debt and it appears that there can be no effective remedy without resort to individual property. *See Cunard Line Ltd. v. Abney,* 540 F.Supp. 657, 659–60 (S.D.N.Y.1982) (applying New York law). Because the complaint lacks any allegations that the partnership is insolvent or is otherwise unable to pay

its obligation, we grant defendants' motion for summary judgment dismissing plaintiff's complaint as to First Reserve Capital and First Reserve.

■ The first substantive issue to be addressed is whether AmGO's retention of Heafitz's distributive share constituted a set-off as plaintiff asserts or alternatively a common-law recoupment as defendant asserts. A set-off, unlike a recoupment, involves the concept of mutuality of obligations. *See Sapir v. Blue Cross/Blue Shield,* 34 B.R. 385 (S.D.N.Y.1983). Thus, for instance, in accordance with the doctrine of mutuality, pre-petition claims may not set-off against post-petition claims. *See In re Shoppers Paradise, Inc.,* 8 B.R. 271, 279 (Bankr.S.D.N.Y.1980). The rationale underlying the doctrine of mutuality is that a pre-petition debtor and a debtor-in-possession are separate and distinct entities. *See Shopmen's Local 455 v. Kevin Steel Products, Inc.,* 519 F.2d 698, 704 (2d Cir.1975). Thus, the doctrine is not violated when pre-petition obligations are set off against each other. *Id.*

Furthermore, a setoff involves a claim of the defendant against a plaintiff which arose out of a transaction which is different from that on which the plaintiff's claim is based. *See Rakozy v. Reiman (In re Clowards, Inc.)* 42 B.R. 627 (Bankr.Idaho 1984), *see also In re Shoppers Paradise, Inc.,* 8 B.R. at 271 (creditor sought to offset payments due and owing by the debtor under a promissory note resulting from a loan against payments due by the creditor under a *distinct* lease). On the contrary, unlike setoff, the right, defense or counterclaim for recoupment requires that the defendant's claim grow out of the identical transaction that furnishes the plaintiff's cause of action. *Steinberg v. Illinois Department of Mental Health and Developmental Disabilities (In re Klingberg Schools),* 68 B.R. 173 (N.D.Ill.1986).

In the instant case, plaintiff asserts that AmGO's obligation to make distributions to

---

1. Plaintiff asserts that pursuant to 11 U.S.C. § 502(b)(2) accrual of interest ceases upon the filing of a petition. Thus, the capital balance is based on accrued pre-petition interest due AmGO.

Heafitz and Heafitz's obligation to pay the accrued interest and principal on his notes arose from separate sources and are completely independent from one another. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment dated November 12, 1987, at 20. Consequently, plaintiff reasons that defendants' retention of Heafitz's distributive share constitutes set-off and not recoupment. We disagree. Plaintiff's reading of section 8.5 of the Partnership Agreement ("Section 8.5") without also considering section 5.6 and the promissory notes executed by Heafitz is indeed misleading. Although Section 8.5, *supra,* provides that a percentage of ordinary income shall be distributed to partners on a calendar quarterly basis, both Section 5.6 and the executed promissory notes act to restrict and quantify the rights set forth in Section 8.5.

More specifically, Section 5.6 contains a contingency whereby Heafitz is entitled to receive his distributive share only to the extent that such share exceeds unpaid principal and accrued but unpaid interest on the promissory notes executed by Heafitz. The respective obligations, therefore, may not be deemed exclusive of one another. Plaintiff cannot simply pick and choose only those provisions that further its position while ignoring more specific provisions that hinder its position. We follow *Mist Properties v. Fitzsimmons Realty, infra,* in holding that "there is no intervening public policy which prevents persons dealing at arm's length from entering into an agreement.... It has been repeatedly held that where a limited partnership agreement has been entered into the partners cannot, *inter se,* set up that these rights are not governed thereby." [2] *Mist Properties, Inc. v. Fitzsimmons Realty Co., Inc.,* 228 N.Y.S.2d 406, 410 (Sup.Ct.

Kings Co.1962). We are convinced that if plaintiff's requested relief were granted this would in effect act to nullify certain provisions that AmGO relied upon and would thus place AmGO in a detrimental position. *See infra.*

 Plaintiff further contends, however, that the doctrine of recoupment is limited to circumstances involving overpayments and advances and thus is inapplicable to the instant case. Tr. at 11. We find this assertion to be unfounded since it fails to account for the fact that Heafitz did indeed receive a 2% partnership interest which was essentially an advanced credit in the principal amount of over $2.8 million when it executed the promissory notes. Thus far, plaintiff has never made a cash payment to AmGO in an effort to satisfy his obligations. Consequently, we concur with AmGO in noting that Heafitz got something for nothing. *See* Tr. at 23. Plaintiff has not sufficiently demonstrated to this court why a partnership interest should not be treated as an advance or overpayment. Moreover, *assuming arguendo,* that a partnership interest is not analogous to an advance or overpayment, we are, nonetheless, unconvinced that the doctrine of recoupment is limited to overpayment or advances. *See In re Clowards, Inc.,* 42 B.R. at 627.

The flexible nature of recoupments is best illustrated in *Clowards.* In *Clowards* the bankruptcy trustee of a subcontractor of a general contractor attempted to recover the full amount of the balance due under the contract between the general contractor and the subcontractor. The general contractor had a claim against the subcontractor for breach of contract. The court recognized that both parties' claims arose

---

**2.** Plaintiff contends that there is conflicting language contained in Section 5.6 which makes it unclear whether principal, as distinguished from interest, was ever intended to be repaid out of partnership distributions or was instead to be repaid by Heafitz in annual installments. *Supra.* We find such contention to be incredulous. It is explicitly set forth in Section 5.6 that the quarterly distribution will be used to pay unpaid principal as well as accrued but unpaid interest. The fact that Section 5.6 also provides that Principal of the notes as well as unpaid interest is to be paid in equal installments merely acts to ensure AmGO that Heafitz's obligations will be satisfied. According to AmGO, the language "plainly protects the partnership interest without paying either due but unpaid interest *or* due but unpaid principal as required." *See* Defendants' Reply Memorandum in Opposition to Plaintiff's Motion for Summary Judgment dated November 12, 1987, at 11.

from the same transaction. *Id.* Consequently, in accordance with the doctrine of recoupment, the general contractor was permitted to reduce its debt by deducting the breach of contract damages. *Id.* In light of the above, we recognize the fallacy in plaintiff's argument since *Clowards* did not involve an advance or overpayment.

Although we are in accord with AmGO's assertion that said party's action constituted recoupment, we nonetheless refuse to condone the "self-help" tactics it used. Instead, we hold that a party seeking to exercise a proper recoupment must first seek relief from the automatic stay, 11 U.S.C. § 362. AmGO, nonetheless, asserts that recoupments are exempt from § 362. Such assertion is based on several cases in this District. *See e.g. In re Maine*, 32 B.R. 452 (Bankr.S.D.N.Y.1983); *Sapir v. Blue Cross/Blue Shield*, 34 B.R. 385 (S.D.N.Y. 1983). Other courts, however, recognize that although the exact wording at § 362(a) does not refer to recoupments, *per se*, they should nonetheless be subject to the automatic stay just as setoffs are. *See In re Klingberg*, 68 B.R. at 178; *see also* 11 U.S.C. § 553.

In *Klingberg, supra*, for instance, the District Court considered both the principles of setoffs and recoupments and stated as follows:

> Although we do not decide this issue, it would seem that recoupment should be subject to the stay because the purpose of the automatic stay is to give "the debtor a breathing spell from his creditors" and to permit the debtor to attempt a repayment or reorganization plan, or simply "to be relieved of the financial pressures that drove him into bankruptcy" without the specter of his creditors breathing down his neck. S.Rep. No. 989, 9th Cong. 2d Sess. (1978), 1978, U.S. Code Cong. & Admin.News 5787. Even though the Bankruptcy Code provides a limited exception to the discharge of all debts for *certain* setoffs under 11 U.S.C. § 553, the automatic stay applies to such setoffs, and a creditor may not setoff the debt without leave of the court under section 362. *The same reasoning which*

*makes all setoffs subject to the automatic stay provisions should apply to recoupments.* 68 B.R. at 178; *see also* 11 U.S.C. § 362(a)(7). (Emphasis added)

Similarly, in *In re Ohning*, 57 B.R. 714 (Bankr.N.D.Ind.1984), the court noted that the defendant trucking company which had proceeded to recoup pre-petition advances it made to plaintiff trucker "took no steps to maintain the status quo or to seek permission of the courts to withhold the earnings." *Id.* at 716. Further, the *Ohning* court, in granting debtor's motion for summary judgment, recognized that

> Any action by a creditor, such as Schneider to collect a pre-petition debt, such as the negative balance in the Ohnings' truck account, from property of the estate, such as Ohnings' post-petition earnings, is a paradigm example of the activity specifically prohibited by the automatic stay. The Ohnings have established an intentional violation of the automatic stay.

Consequently, the court granted debtor's motion for summary judgment finding defendant's actions violative of the automatic stay.

The court's reasoning in *Ohning* is in accord with section 362(a)(6) which prohibits "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under the [11 U.S.C. §§ 101 *et seq.*] With regard to subsection (a)(6), the legislative history states:

> Paragraph (6) prevents creditors from attempting *in any way* to collect a pre-petition debt.... This provision prevents evasion of the purpose of the bankruptcy law by sophisticated creditors.

House Rep. No. 95–595, 95th Cong., 1st Sess. 340-2 (1977); Senate Rep. No. 95–989, 95th Cong., 2d Sess. 49–51 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5836, 6298 (emphasis added).

Section 362(a)(6) has been interpreted more broadly than § 362(a)(7), *supra*. *See In the Matter of Haffner*, 25 B.R. 882 (Bankr.N.D.Ind.1982) (creditor's attempt to reduce amount of loan proceeds due to debtor post-petition by amount debtor owed

to creditor under prepetition contract was "an act to collect, assess or recover a claim against the debtor that arose [prepetition]" in violation of § 362(a)(6), though not of § 362(a)(7) which stays the set-off of any debt owed to the debtor prepetition); *see also In re Nelson,* 6 B.R. 248, 250 (Bankr. D.Kan.1980).

In addition to §§ 362(a)(6), (7), plaintiff submits that Heafitz's 2% limited partnership interest and the distributions constituted property of the estate pursuant to § 541. Tr. at 9. Accordingly, pursuant to § 362(a)(3), "any act to obtain possession of property of the estate or to exercise control of the property of the estate" is stayed. In response to the above argument, AmGO relies on the contractual language of Section 5.6 of the Partnership Agreement in asserting that plaintiff never had absolute right to distributions as such right was subject to satisfaction of conditions.

In light of the broad nature of § 362(a)(6), we need not resolve the issue of whether § 362(a)(3) is applicable to the instant case. *See In re Nelson,* 6 B.R. at 250 ("although the funds set off by First National were Nelson's and, therefore, not part of the debtor's estate, as provided in § 541(a)(6), the act of set-off was nevertheless within the compass of.... 362(a)(6)")

At a minimum, when a creditor acts in violation of the automatic stay, said party is ordinarily required to turn over any property it acquires to the debtor's estate. *See United States on Behalf of IRS v. Norton,* 717 F.2d 767, 775 (3rd Cir.1983); *Matter of Haffner,* 25 B.R. at 882, 889; *In re Klingberg,* 68 B.R. at 181.

█ Furthermore, pursuant to § 362(h), "an individual injured by any willful violation of the stay provided by this section shall recover actual damages including costs and attorneys fees, and in appropriate circumstances, may recover punitive damages." 11 U.S.C. 362(h). Courts, however, have interpreted the above section broadly. *See In re Inslaw, Inc.,* 76 B.R. 224, 240 (Bankr.D.Dist.Col.1987) (monetary sanctions may be imposed even for an "inadvertent violation" of the automatic stay) *accord: In re Eisenberg,* 7 B.R. 683, 686

(Bankr.S.D.N.Y.1980) ("action taken in violation of the stay are void even when there is no actual notice of the existence of the stay); *see also Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 51–52 (2d Cir.1976) *cert. denied* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977). Additionally, in *In re AM International, Inc.,* 46 B.R. 566, 577, 578 (Bankr. M.D.Tenn.1985), the bankruptcy court held that it is not true that a legitimate dispute as to rights in property precludes a finding of willfulness of an award of compensation." *In re AM International, Inc.,* the court stated as follows:

> [Commerce Union Bank]'s mistaken belief in its right to redirect and dispose of the lockbox payments does not provide the bank with a defense to [debtor] AMI's assertions that the bank violated the stay of 11 U.S.C. Section 362.

> .... The proper recourse for CUB knowing of the bankruptcy filing and of AMI's right to payment under the lockbox agreement, was to *seek an adjudication* of its competing claims in the bankruptcy court.... As a sophisticated commercial institution familiar with the application and broad scope of the automatic stay, it knew *or* should have known that its actions would improperly interfere with the orderly collection and distribution of AMI's assets....

> It is appropriate to award costs and attorney's fees where an entity has knowingly taken action in violation of the stay.... (Emphasis added) *Id.* at 574, 578.

Similarly, in *Cusanno v. Fidelity Bank,* 29 B.R. 810, 10 B.C.D. 793 (E.D.Pa.1983) the district court upheld an award of costs and attorneys fees against a bank that violated a stay by placing an administrative hold on debtor's checking account despite the fact that there was a conflict among courts as to whether "freezing" a bank account violates the stay. Accordingly, the court held that

> When there exists a dispute as to the classification of a bank account, neither party has the authority to take action affecting the funds. Instead, the *party*

*seeking to take action* concerning the funds *should first* approach the bankruptcy court and file a motion ...

. . . . . .

Even if the bank had possessed a right of setoff against the Cassanos, the bank forfeited this right by failing to seek timely relief in the Bankruptcy Court. (Emphasis added)

29 B.R. at 813; *accord: Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 51 (2d Cir.1976) *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977) ($20,000 fine upheld against counsel for contractors who instituted state court writ to foreclose mechanics liens with knowledge that bankruptcy petition had been filed).

Accordingly, in the instant case, AmGO may not use as an excuse the fact that they believed that their actions constituted valid recoupments and are exempt from the automatic stay. *See In re Tel-a-Communications Consultants, Inc.,* 50 B.R. 250, 254 (Bankr.D.Conn.1985). Like the defendant in *In re AM International, Inc.,* 46 B.R. at 566, AmGO and its attorneys are sophisticated and quite familiar with the broad application of the automatic stay. There was no effort on the part of AmGO to seek a clarification by this court as to the respective rights of the parties involved in the instant action. Consequently, we hold that AmGO acted with arrogant defiance of the law.

In light of the above, we grant plaintiff's motion for summary judgment in part, holding AmGO liable for the trustee's attorney's fees in the amount of $3,000.00, costs of this proceeding in the amount of $150.00 and punitive damages in the amount of $1,000.00.

■ For several reasons, however, we do not deem it appropriate that AmGO be required to return the distributions in issue. First, we take note of plaintiff's actions in this case. We find it curious that plaintiff, which was represented by sophisticated bankruptcy counsel, chose to assert its claims five years *after* the commencement of this case. Tr. at 67. There were several procedural mechanisms that plaintiff could have employed. Second, notwithstanding the use of self-help in violation of section 362, this court would have ruled in favor of defendants since their entitlement to recoupment was indeed justified. *Supra.* It is, therefore, not the end result that we disapprove of, but the means taken to achieve this result. Since we have already imposed costs, attorney's fees and punitive damages on AmGO, we find it unnecessary to penalize said party further by requiring it to turn over the distributions in issue. ·

■ The foregoing analysis is further supported by the fact that this court concurs with AmGO's position that the Partnership Agreement and the promissory notes thereunder constitute an executory contract. Consistent with legislative history, an executory contract in bankruptcy is a contract in which "performance remains due to some extent on both sides." S.Rep. No. 989, 95th; 2d Sess. 58 (1977), *reprinted in* 1978 U.S.Code Cong. & Adm.News 5767, 5844 (1977); H.R.Rep. No. 595, 95th Cong., 1st Sess. 347, *reprinted in* 1978 U.S.Code Cong. & Admin News 5962, 6303. *See also Hasset v. Revlon, Inc. (In re O.P.M. Leasing Services, Inc.)* 23 B.R. 104, 117–18 (Bankr.S.D.N.Y.1982) (executory contract found where substantial obligation remained to be performed by each party). The above definition follows Professor Countryman's definition of an executory contract under the former Bankruptcy Act:

A contract under which the obligation of both the bankrupt and the other party to the contract are so far unperfected that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.

Countryman, *Executory Contracts in Bankruptcy:* Part I 57 Minn.L.Rev. 439, 460 (1973); cited in *In re Texaco Inc.,* 73 B.R. 960 (Bankr.S.D.N.Y.1987); *see also In re Chipwich Inc.,* 54 B.R. 427 (Bankr.S.D.N.Y.1985).

Instead of treating the promissory note and the notes thereunder as a single executory contract, plaintiff treats the above

document separately and focuses solely on the notes. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment dated October 23, 1987 at 20. In quoting legislative history cited in *In re Kash & Karry Wholesale Inc.*, 28 B.R. 66, 69 (Bankr.D.S.C.1982), plaintiff asserts that "a note is not usually an executory contract if the only performance that remains is repayment. Performance on one side of the contract would have been completed and the contract is no longer executory." *See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment dated October 23, 1987 at 34; *see also* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 347 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 58 (1978, U.S. Code Cong. & Admin.News 1978, p. 5787.

Although the above quote may be applicable in a typical sale of goods on credit whereby one side of the contract has fully performed and the only remaining executory duty is for the purchaser to pay in accordance with the terms of the promissory note for the purchase price, it is inapplicable in the instant case. Plaintiff's narrow focus of the notes without consideration of the Partnership Agreement and notes thereunder presents a distorted picture.

As the Ninth Circuit explained in *Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339 (9th Cir.1983),

The existence of a promissory note on any given date, therefore, is not in and of itself proof that the payments on the note are in performance of an executed contract. Since payments on a promissory note are merely the performance of one side of the bargain, *the note must be examined in conjunction with the other undertakings that, together with the promissory note, constitute the relevant contract* of which the promissory note is but a part to determine what commitments remain to be performed by the parties. (Emphasis added) *Id.* 1347–48.

Accordingly, in *Cochise College Park* the court found that a land sales contract and promissory note amounted to a single exec-

utory contract. *Id.* at 1348; *accord: In re Texaco, Inc.*, 73 B.R. 960 (Bankr.S.D.N.Y. 1987) (trust indenture and notes thereunder constitute executory contract). More specifically, the court in *Cochise College Park* held that the seller's unperformed duties is to construct various "improvements and the purchaser's ongoing duty to make various payments rendered the contract executory." *Id.* at 1348. The Ninth Circuit in *Cochise College Park* also concluded that if the seller had only the remaining obligation of releasing the mortgage on the purchased land upon completion of payments, such obligations would still render the contract executory. *Id.* at 1348, n. 5; *accord: Hunts Point Tomato Co. v. Roman Crest Fruit*, 35 B.R. 939, 948 (Bankr. S.D.N.Y.1983).

Similarly, in *In re Swindle*, 188 F.Supp. 601 (D.Oregon 1960), the court determined that a land sales contract, escrow agreement and a promissory note was one single executory contract. *Id.* at 604. In *Swindle*, the debtor had purchased a lot from an investment company in exchange for a promissory note and mortgage. Thereafter, upon resale of said property the debtor appointed the investment company as escrow agent and instructed said company to deduct the amount the debtor owed under the promissory note from the proceeds of the sale. Subsequently, in bankruptcy proceedings, the trustee demanded that said proceeds from the lot should be directed to him. After the court determined that the transaction amounted to a single executory contract, it permitted the investment company to deduct from the sale proceeds the principal and accrued interest of the promissory notes. In its discussion, the *Swindle* court cited *In re Italian Cook Oil Corp.*, 190 F.2d 994, 997 (3rd Cir.1951) for the proposition that trustee may not blow "hot and cold;" he must either reject a contract in full or assume the contract in full, which includes both benefits and burdens. 188 F.Supp. at 604.

As in the above cases, in the instant case AmGO has unperformed material duties including the obligation to make distributions, to furnish additional financial state-

ments, to prepare quarterly progress reports and to maintain the books and records of the partnership. *See supra.* Similarly, Heafitz had a continuing duty to satisfy his obligations on the executed promissory notes. We follow the decision in *In re Roman Crest Fruit,* 35 B.R. at 939, 948 in which the court held that an executory contract exists where a seller has unperformed duties and where the purchaser's sole unperformed duty is that of payment. *See also In re Cochise College Park,* 703 F.2d at 1347–50. In the instant case, aside from Heafitz's duty to satisfy its obligations on the promissory notes, Heafitz also had additional obligations pursuant to the Partnership Agreement. *See, supra.*

In terms of cases specifically addressing the issue of whether a partner's duty to contribute to a partnership pursuant to a partnership agreement may be considered executory, we are in accord with the cases cited by defendants which hold that such duty is indeed executory. *See In re Sunset Developers,* 69 B.R. 710, 712 (Bankr.D.Idaho 1987); *Skeen v. Harms,* 10 B.R. 817, 820 (Bankr.D.Col.1981). We note that the court in *Sunset* relied on the Countryman definition, *supra,* of an executory contract. Plaintiff, nonetheless, relies on *Greenstone v. Klar,* 69 N.Y.S.2d 548 (Sup. Ct.N.Y.Co.), *modified* 272 App.Div. 892, 71 N.Y.S.2d 201 (1st Dept.1947) for the proposition that partnership distributions are not contingent upon payment of a limited partnership. It is important to note, as defendants have correctly indicated, that *Greenstone* was reversed on the very point that it was cited for. The Appellate Division in *Greenstone* determined that "it would be manifestly unjust and not in accordance with the agreement and plaintiff's own construction of it" to permit it to receive profits without having first contributed its share of the expenses. 272 App.Div. 892, 71 N.Y.S.2d 201, 203. Thus, contrary to plaintiff's belief, *Greenstone* further supports defendants' position that a partner's duty to contribute capital is indeed executory. Furthermore, *Greenstone* indeed upheld the well-established principle that a partnership agreement will not be rewrit-

ten by the court but will stand and be strictly adhered to. *Supra.*

We further recognize, as did the *Sunset* court, *supra,* that a partnership agreement creates a fiduciary relationship among partners which is based on personal trust and confidence. *Sunset* 69 B.R. at 710; *accord Harms* 10 B.R. at 821; *see also In re Stanton,* 38 B.R. 746, 752 (9th Cir. BAP, 1984). The fiduciary character "imposes the duty of good faith and fair dealing and requires that none of the partners take unfair advantage." *Sunset* 69 B.R. at 713.

In accordance with the above, Heafitz, as a fiduciary of AmGO, may not violate the personal trust and confidence that AmGO relied on when both parties entered into the Partnership Agreement. *See Mist Properties Inc. v. Fitzsimmons Realty,* 228 N.Y. S.2d at 406, 410; *Lanier v. Bowdoin,* 282 N.Y. 32, 24 N.E.2d 732 (1937). If such violation were allowed, Heafitz would be granted, in essence, an unfair advantage to the detriment of AmGO. This is especially true in light of the fact that Heafitz had assumed all executory contracts pursuant to the plan of reorganization (Plan, Art. X, p. 15) and is thus bound by it. *See Swindle,* 188 F.Supp. at 604. In *Swindle,* the court followed the well-settled rule that an assumption of a contract requires that a trustee adopt the burdens of said contract in addition to receiving the benefits thereof. 188 F.Supp. at 604; *see also In re Italian Cook Oil Corp.,* 190 F.2d 994, 997 (3rd Cir.1951) (the trustee "may not blow hot and cold"). Consequently, in the instant case, the trustee may not escape its obligations of a contract it expressly assumed. The above argument in favor of defendants obviates the need to address the issue of whether defendants hold a perfected lien on the Heafitz partnership units and on the monies constituting the distributive share respecting those units.

In respect to the above, we deem it appropriate to grant AmGO's motion for summary judgment thereby allowing it to retain the partnership distributions in issue that were withheld from plaintiff. Fur-

thermore, we deem it appropriate for AmGO to continue to withhold future distributions in accordance with the Partnership Agreement.

### Conclusion

Defendants' motion for summary judgment dismissing plaintiff's complaint as to First Reserve Capital Management and First Reserve is granted. Defendants' motion for summary judgment requesting an entitlement to past and present future partnership distributions from Heafitz (until the conditions set forth in the Partnership Agreement are satisfied) is granted. Plaintiff's motion for summary judgment is granted as to the request for attorney's fees, costs associated with this proceeding and punitive damages. We deem it appropriate to award $3,000.00 in attorneys' fees, $150.00 in costs associated with this proceeding and $1,000.00 in punitive damages.

Settle Order on Notice consistent with this decision.