In re Luis RUIZ and Raquel
Pe De Ruiz, Debtors.

**Bankruptcy No. 91–14603–BKC–RAM.**

United States Bankruptcy Court,
S.D. Florida.

Oct. 30, 1992.

Barbara Areces, Areces & Areces, P.A., Miami, Fla., for debtors.

Edward Waldron, Coral Gables, Fla., for BMI Intern. Brokerage, Inc.

Robert L. Roth, Miami, Fla., Chapter 13 Trustee.

## MEMORANDUM OPINION

ROBERT A. MARK, Bankruptcy Judge.

Creditor, BMI International Brokerage, Inc., ("BMI") has filed a Motion to Modify Stay to Permit Setoff. The motion seeks relief to allow BMI to withhold and setoff post-petition commissions due the Debtor against pre-petition advances BMI paid the Debtor. The Court conducted an evidentiary hearing on June 10, 1992 after which the parties filed supplemental memoranda in support of their respective positions.

The Court has reviewed the entire record including the documentary evidence and testimony presented at the hearing, the memoranda submitted and the pertinent case law. For the reasons that follow, the creditor's motion for stay relief will be granted to allow BMI to withhold $16,-000.62 in post-petition commissions to be applied against advance commissions paid to the Debtor. BMI is not entitled to relief under Bankruptcy Code § 553 but the common law doctrine of recoupment supports and requires this result.

## FACTUAL BACKGROUND AND SUMMARY OF ARGUMENT

The Debtors, Luis and Raquel Ruiz, filed a joint voluntary petition for relief under Chapter 13 of Title 11 on September 23, 1991. The Debtors' First Amended Chapter 13 Plan was confirmed on November 27, 1991. The debtors' scheduled unsecured claims include a debt of $16,700.00 to BMI.

Prior to filing bankruptcy, Luis Ruiz was a general insurance agent selling insurance for BMI. Pursuant to the General Agent Agreement between the parties which became effective on February 1, 1990 (the "Agreement"), Ruiz was named a general agent for BMI to sell life insurance, annuities and any other products offered by life insurers represented by BMI. The agreement provided that commissions on premiums, other than the first premium given to procure the policy, would be payable by check monthly to the general agent. Paragraph 15 of the agreement further provides in pertinent part:

> Any prepayment of unearned or unaccrued commissions, or any so-called advances, shall be a debt due BMI or the Insurer by the General Agent. The Insurer or BMI may apply any commissions due hereunder to the payment of any debt of any nature, however arising, now due or to become due. The Insurer or BMI may offset against any claim for commissions and any other compensation, payable by the insurer or BMI to the General Agent under this agreement or under any other agreement with the Insurer or BMI now or hereafter existing or future indebtedness of the General Agent to the Insurer or BMI ...

Prior to his bankruptcy filing, BMI advanced to Ruiz the total sum of $16,000.62. The company contends that these advances were in the ordinary course of business and not against the general policy of the agency agreement. Eloy De Armas, BMI's Vice President and Chief Financial Officer, testified that BMI's practice was to advance monies to agents based on insurance contract sales. The monies advanced to the Debtor prior to his bankruptcy filing were

not specific amounts tied to specific contracts, but in the aggregate, his pre-petition sales were deemed sufficient by BMI to justify the advances. De Armas also testified that this practice existed for several years prior to the bankruptcy with advances always "repaid" by deductions from future commissions.

The post-petition renewal commissions arise from policies sold by the Debtor pre-petition. The Debtor has not sold or written any new policies since he filed his bankruptcy petition.

BMI claims a right of setoff pursuant to 11 U.S.C. § 553 against all post-petition commissions it would otherwise owe Ruiz until it has recovered the $16,000.62 advance. Although not specifically pled in its motion, BMI alternatively argues that if setoff is not available under § 553 of the Code, it still is entitled to retain and apply future commissions against the advanced commissions under the common law doctrine of recoupment.

The Debtor disagrees. He first argues that BMI is not entitled to setoff under § 553 because there is no mutuality of debt between the pre-petition advances paid to the Debtor and the renewal commissions owed to the Debtor post-petition. The Debtor also argues that recoupment is impermissible since the debts are separate. In support, Debtor refers to paragraph 15 of the General Agent Agreement. Under that language the Debtor is personally liable for the amount of the advances. Therefore, Debtor claims that the monies owed to BMI should be viewed as a separate unsecured pre-petition debt subject to treatment and discharge in the Chapter 13 plan with the renewal commissions treated as separate post-petition earnings which BMI must pay to the Debtor.

## DISCUSSION

■ Bankruptcy Code § 553 allows for setoff of mutual pre-petition debts between the creditor and the debtor under certain circumstances. Code section 553(a) provides:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case ...

■ To maintain a right of setoff, the creditor must prove the following:

(1) That a debt exists from the creditor to the debtor and that the debt arose prior to the commencement of the bankruptcy case;

(2) That the creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case;

(3) That the debt and the claim are mutual obligations.

*Braniff Airways, Inc., v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1035 (5th Cir.1987); *In the Matter of Nickerson & Nickerson, Inc.*, 62 B.R. 83, 85 (Bankr.D.Neb.1986).

■ Section 553 only permits setoff of mutual pre-petition debts. It does not permit a creditor to collect a *pre-petition* debt by withholding payment of a *post-petition* debt owed to the debtor. *In re Sluss*, 107 B.R. 599 (Bankr.E.D.Tenn.1989). In this case, the post-petition commissions which BMI seeks to retain were generated from insurance contracts sold pre-petition. Still, under the Agreement, the Debtor was not entitled to the commissions until the post-petition premiums were paid.[1] Thus, BMI's obligation to the Debtor for post-petition commissions is post-petition debt. As such, BMI has no right of setoff and its claim for relief under § 553 must fail.

■ Although the Agreement uses the word "setoff" and that is the primary theory argued by BMI, determining BMI's rights to the post-petition commissions requires the Court to also consider applica-

---

**1.** Paragraph 5(c) of the Agreement provides that "Commission will be paid to the General Agent only on such premiums as have fallen due and have been paid ... on policies ... secured by the General Agent."

tion of common law recoupment. At common law, a defendant was entitled to withhold what he owed to a plaintiff to the extent that it was equitable to do so, if both obligations arose from the transaction which was the basis of the plaintiff's cause of action. *B & L Oil Co.*, 782 F.2d 155 (10th Cir.1986); *In re Ohning*, 57 B.R. 714, 717 (Bankr.N.D.Ind.1986). The doctrine of recoupment survives in bankruptcy. *Lee v. Schweiker*, 739 F.2d 870 (3rd Cir.1984); *In re Monongahela Rye Liquors*, 141 F.2d 864, 869 (3rd Cir.1944).

■ While setoff under § 553 is limited to instances involving mutuality of obligation, the doctrine of recoupment simply requires the claims to arise from the same transaction, and that the amounts recouped not exceed the amount of the original sum owed. *In the Matter of Holford*, 896 F.2d 176 (5th Cir.1990); *B & L Oil Co.*, 782 F.2d at 155; 4 LAWRENCE P. KING, COLLIER ON BANKRUPTCY, para. 553.03 (15th Ed. 1984). Despite the Debtor's contention, the advances of commissions and the post-petition renewal commissions involved in this case unquestionably arise from the same transaction. Both grow out of the pre-petition insurance policies written by the Debtor. BMI advanced commissions to the Debtor in anticipation of the collection of the expected renewal premiums.

The Debtor relies primarily on *In re Sluss* to defeat BMI's claim. As discussed earlier, *Sluss* is on point on the setoff issue since here, as in *Sluss*, the creditor's debt to the Debtor is a post-petition obligation. *Sluss* is not controlling on the recoupment theory. In *Sluss*, there were three separate contracts and it was clear that the creditor wanted to retain commissions on one contract in part to offset or recoup pre-petition debts under the other contracts. That is not our case. Here, there is a single Agreement. The Debtor received advances based on sales made under the Agreement; the commissions BMI seeks to retain arise from the same sales under the same Agreement. Moreover, to the extent *Sluss* holds that recoupment is not available, even under a single insurance agent

contract, this Court disagrees with its holding.

■ The doctrine of recoupment, as it survives in bankruptcy, only applies if a debtor's pre-petition work product produces post-petition revenue which is not dependent upon the debtor's post-petition efforts. A defendant may not, consistent with the policy of the Bankruptcy Code, withhold that which is due a debtor for post-petition efforts to satisfy a pre-petition debt. *In re Sherman*, 627 F.2d 594 (2nd Cir.1980); *Waldschmidt v. CBS, Inc.*, 14 B.R. 309 (M.D.Tn.1981). A debtor's future earnings or earnings earned post-petition are protected to provide the debtor's fresh start. *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

Several bankruptcy decisions have applied the doctrine of recoupment. In the *Waldschmidt* case, singer George Jones made several records for CBS corporation. CBS had advanced Jones royalties prior to the bankruptcy filing in anticipation of future earnings from his albums. The district court held that the post-petition royalties which resulted from Jones' pre-petition work product could be withheld by CBS, until the full advancement had been recovered. The court determined that the post-petition royalties did not relate to any post-petition effort by Jones. The royalties were based exclusively on the pre-petition work product which he had created. *Waldschmidt v. CBS, Inc.*, 14 B.R. at 314–315.

In the case of *In re Ohning*, 57 B.R. at 714, a trucking company advanced funds to drivers for fuel and other expenses prior to their weekly runs. These advances were offset against the driver's compensation due for each run. At the end of the week, the net amount from each run was totaled, and if any credit balance remained it would then be submitted to the driver. Likewise, the contract provided for the recoupment of any such advances if there remained a negative balance. The debtors' truck account had developed a negative balance of approximately $8,000.00 when the drivers filed for Chapter 13 relief. In *Ohning*, the court reasoned that the trucking company

could recoup pre-petition advances from post-petition earnings if they resulted strictly from pre-petition work product. Since the post-petition earnings it sought to retain resulted from post-petition work by the debtors, the court held that the trucking company was not entitled to recoupment.

Finally, this Court has analyzed two similar cases involving insurance agents, *In re Sherman,* 627 F.2d 594 (2nd Cir.1980) and *In re Tomer,* 128 B.R. 746 (Bankr.S.D.Ill. 1991). In *Sherman,* the Trustee moved to recover renewal commissions collected and retained by an insurance company to recoup advance commissions paid to the debtor pre-petition. Reversing the decisions below, the Second Circuit held that the debtor was not entitled to future compensation from the insurance company until the insurance company recouped the amount that the debtor had already been paid in advanced commissions. The court found that the debtor did not have a property interest in the renewal commissions until all the advances were recouped.

The facts in *Tomer* are very similar to our case. In *Tomer,* the General Agent Agreement between the debtor and the insurance company characterized all advances made to the agent as "loans". The debtor argued that because he was personally liable to repay shortfalls from non-repaid advances there was no mutuality of debts. In other words, the advances he was given had no connection with the post-petition renewal commissions and therefore the insurance company should not be entitled to an offset. Although the advances were depicted as a loan, the court in *Tomer* found the advances to simply be advanced compensation or prepayments on commissions that in the future would be generated from the policies sold pre-petition or annually renewed without post-petition work. Having already received some commissions on the policies, the Debtor was not entitled to the renewal commissions until the advance commissions were repaid in full.

The facts are similar here. Once this Court concludes that the advances were based upon the same pre-petition work that generated the post-petition commissions, the result is clear. BMI must be allowed to recoup the advances by retaining the post-petition commissions. If denied that right, BMI will be paying the Debtor twice for the same services.

In view of these considerations, BMI is entitled to relief from the automatic stay to affect a common law recoupment of the $16,000.62 in advances it made to the Debtor from the post-petition renewal commissions at issue in this case. A separate order granting stay relief will be entered.