**In re BLACKWELL & WALKER, P.A., Debtor.**

**Bankruptcy No. 96–10862–BKC–RAM.**

United States Bankruptcy Court, S.D. Florida.

Oct. 9, 1996.

582

Scott L. Baena, Stroock & Stroock & Lavan, Miami, FL, for Citibank, F.S.B.

Arnold Schatzman, Schatzman & Shupack, Miami, FL, for Debtor.

### *MEMORANDUM OPINION AND ORDER GRANTING CITIBANK'S MOTION FOR STAY RELIEF*

ROBERT A. MARK, Bankruptcy Judge.

Citibank, F.S.B. ("Citibank") seeks stay relief to effect a setoff against funds in a Citibank bank account of the Debtor, Blackwell & Walker, P.A. (the "Debtor"). The central issue in dispute is whether certain guaranties executed by the Debtor are enforceable thereby establishing a prepetition debt to support the setoff claim.

### *PROCEDURAL BACKGROUND*

This case was commenced by the filing of an involuntary Chapter 7 petition on February 14, 1996 (the "Petition Date"). The Debtor, a law firm that had disbanded and was in the process of liquidation, did not contest the petition and an Order for Relief was entered on March 7, 1996.

Citibank filed its motion for stay relief on April 11, 1996. James Feltman, the Chapter 7 Trustee, filed an objection. The Court conducted an evidentiary hearing on the motion on May 7, 1996, and requested supplemental briefs. After consideration of the motion, the objection, the exhibits, testimony

and argument presented at the hearing, and the supplemental briefs, the Court concludes that Citibank is entitled to stay relief to enforce its setoff rights under § 553 of the Bankruptcy Code.

### FACTUAL BACKGROUND

On September 22, 1993, Citibank sent the Debtor a letter presenting Citibank's terms for its Capital Contribution Loan Program (the "Program"). Citibank's Exhibit No. 1. Under the terms of the Program, shareholders of the Debtor could apply to Citibank for extension of loans with the intention of contributing the proceeds of the loans to the Debtor. The terms of the Program also called for the Debtor's guaranty of the loans to the individual shareholders. Certain of the Debtor's shareholders entered into the following loan agreements (the "Shareholder Loans") with Citibank prior to the Petition Date: (1) On December 20, 1993 Citibank loaned Patrick Barthet ("Barthet") $32,500; (2) on January 18, 1994, Citibank loaned Robert Brown ("Brown") $80,000; (3) on January 24, 1994, Citibank loaned William Charouhis ("Charouhis") $120,000; and (4) on January 13, 1995, Citibank loaned William Bromagen ("Bromagen") $30,000.[1] Citibank's Exhibits Nos. 2–5. Citibank had the right to demand full payment of each loan at anytime. Citibank's Exhibits Nos. 2–5. As contemplated, the shareholders contributed the proceeds from the Shareholder Loans to the Debtor as capital.

Although the terms of the Program called for the Debtor's guaranty of the loans at the origination dates of the Shareholder Loans, the Debtor did not execute guaranties of the Shareholder Loans when the loans were made. Citibank claims that the guaranties were required by Citibank and intended by the Debtor; however, Citibank cannot explain the failure of the parties to execute the guaranties when the Shareholder Loans were made.

On May 5, 1995, the Debtor executed a Continuing Guaranty (the "Continuing Guaranty") with respect to two of the four loans

at issue, the Charouhis and Bromagen loans. Citibank's Exhibit No. 6. On May 11, 1995, the Debtor sent two letters to Citibank (the "May 11, 1995 Letters") in which the Debtor discussed the two other loans at issue, the Barthet and Brown loans. Citibank's Exhibits Nos. 7–8. These letters acknowledged that Citibank would not have entered the Shareholder Loans with either Barthet or Brown without the Debtor's guaranty. Each letter purportedly "reaffirms and restates [the Debtor's] guarantee of the Demand Note [for the Shareholder Loan]." Citibank's Exhibits Nos. 7–8. The letters further advise Citibank that the Debtor assumes all obligations of Barthet and Brown under the Demand Note without requiring Citibank to release the individual obligors. Citibank's Exhibits Nos. 7–8.

The aggregate principal amount remaining on the Shareholder Loans is $46,333.33. On the Petition Date, the Debtor had over $80,000 on deposit at Citibank. Citibank remitted approximately $34,000 to the Trustee. The Debtor has $46,333.33 in bank accounts at Citibank, an amount sufficient to satisfy the remaining loan balance if the guaranties are enforceable.

### DISCUSSION

■ Citibank seeks stay relief to offset $46,333.33 presently held in the Debtor's bank accounts at Citibank against monies which remain due and owing by the Debtor in connection with the Debtor's guaranty of the outstanding balance on the Shareholder Loans. To establish a right of setoff, a creditor must prove (1) that a debt exists from the creditor to the debtor which arose prior to the commencement of the bankruptcy case; (2) that the creditor has a claim against the Debtor which arose prior to the commencement of the bankruptcy case; and (3) that the debt and the claim are mutual obligations. *In re Ruiz,* 146 B.R. 877, 879 (Bankr.S.D.Fla.1992).

In this case, the first element is undisputed. The Debtor's account balance at Citi-

---

**1.** Citibank extended loans to several other shareholders during this time period. Those loans are

not at issue here.

bank constitutes a debt owed by Citibank to the Debtor which arose prior to the Petition Date. The third element is also undisputed if Citibank holds a claim since the obligations are mutual. The only element in dispute is the existence of a claim by Citibank, proof of which hinges on the enforceability of the guaranties.

■ The threshold question in determining enforceability is whether the Continuing Guaranty and the May 11, 1995 Letters executed after Citibank funded the loans are supported by consideration so as to establish the existence of a valid prepetition debt owed by the Debtor to Citibank.[2] For the following reasons, the Court finds that the Continuing Guaranty and the May 11, 1995 Letters are supported by consideration and enforceable against the Debtor. .

The Trustee argues that new and separate consideration was necessary for the subsequent guaranties to become enforceable. The only exception to the new consideration requirement, the Trustee asserts, is when the subsequent guaranty covers future advances as well as existing indebtedness. The Trustee cites *Texaco, Inc. v. Giltak Corp.*, 492 So.2d 812, 814 (Fla. 1st DCA 1986) and *Gibbs v. American National Bank of Jacksonville*, 155 So.2d 651, 655 (1st DCA 1963) for the general rule that new consideration is required where a guaranty is executed subsequent to the principal loan contract. Since the Debtor's guaranties did not cover future advances, the Trustee argues that they must be supported by independent consideration to be enforceable.

Citibank argues that it was not necessary to provide independent consideration for the Continuing Guaranty and the May 11, 1995 Letters because these guaranties were conditions to Citibank originally making the Shareholder Loans, citing *Barnett Bank v. University Gynecological Associates, Inc.*, 638 So.2d 595 (Fla. 4th DCA 1994). The *Barnett* court held that a written guaranty executed two months after the execution of the underlying note *could* be enforceable without separate consideration if the guaranty was a condition of the making of the original loan.

■ In *Barnett*, the appellate court did not hold that the written guaranty *was* enforceable as Citibank argues; it merely reversed the trial court's entry of judgment for the guarantor on the pleadings. 638 So.2d at 596. In reversing the lower court judgment, the *Barnett* court distinguished *Texaco* on the grounds that the guaranty in *Barnett* was a condition of the loan. *Id.* The court reasoned that the new consideration requirement is not solely triggered by the timing of the guaranty. *Id.* The *Barnett* holding indicates that a guaranty executed after the principal obligor signed the note and received the loan *may* be supported by the consideration supporting the original loan transaction if the guaranty was a condition to the loan. *Id.*

■ Although *Barnett* does lend support to Citibank's argument for enforcing the guaranties without the need for new consideration, *Barnett*'s limited discussion does not convince the Court that Citibank can simply bootstrap the consideration it gave to the shareholders at the time of the original loans to support the subsequent guaranties given to it by the Debtor. The prevailing law in Florida requires that a guaranty executed independently of the original loan must be supported by separate consideration. *See e.g. Texaco*, 492 So.2d 812, 814 ("A guaranty executed subsequent to the principal contract and not a part of the same transaction must be supported by a new consideration"); *Gibbs*, 155 So.2d 651, 655 ("[W]here the contract of guaranty is entered into independent of the transaction which created the original or present debt or obligation, the guarantor's promise must be supported by a consideration distinct from that of the present debt. . . .") (citing to 24 Am.Jur., p. 906, Guaranty, § 50).

■ Three of the four subsequent guaranties in this case were executed almost seventeen months after the original loan contract.

2. The Trustee also raised the issue of whether the May 11, 1995 Letters are guaranties that satisfy the Statute of Frauds writing requirement. The Court finds that the May 11, 1995 Letters are guaranties that satisfy the writing requirement of § 725.01 (Statute of Frauds), Florida Statutes (1995).

Plaintiff's Exhibit No. 6–7. The fourth was executed almost five months after the original loan was made. Plaintiff's Exhibit No. 6. Although there was evidence presented that the subsequent guaranties were intended to be in effect at the origination of the loan, the executed loan agreements did not require the guaranties. Therefore, the Debtor's subsequent guaranties of the Shareholder Loans were executed independently and require new consideration.

■ Citibank argues alternatively that even if separate consideration is necessary for the subsequent guarantees, sufficient consideration was provided to the Debtor by Citibank forbearing from exercising its legal right to call the Shareholder Loans and to accelerate the debt due under each of the loans.[3] Relying once again on *Gibbs,* the Trustee argues that mere forbearance by Citibank does not constitute sufficient consideration for a guarantee by a third party, such as the Debtor. *Gibbs* holds that "*mere forbearance* by a creditor . . . is not deemed to be a sufficient consideration for a guaranty by a third person." 155 So.2d at 655 (emphasis added).

■ *Gibbs* does not defeat Citibank's argument. As the *Gibbs* court noted, where a creditor enters into an agreement to forbear, that agreement will suffice as consideration for a guaranty. *Id.* Indeed, forbearance to sue on a debt or to accelerate a debt is good consideration where that forbearance was bargained for at the time the guaranty was executed. *Bara v. Jones,* 400 So.2d 88, 89 (Fla. 4th DCA 1981). Such forbearance will constitute adequate consideration even where the claim or acceleration is not directed at the guarantor. *Id.* (stating that an agreement to forbear is sufficient consideration even if "the forbearance was of no advantage [to the guarantor]."); *Marks Brothers Pav-*

*ing Co. v. Mt. Vernon Homes, Inc.,* 156 So.2d 787, 787–788 (Fla. 3d DCA 1963).

■ In *Marks Brothers,* a corporation's note was guaranteed by three shareholders of the corporation and the father of a shareholder. *Marks Brothers,* 156 So.2d at 787. The corporation submitted the note and guaranties in response to the creditor's threats to sue on a previously overdue obligation of the corporation. *Id.* The creditor agreed to forbear and extend the time in which to pay the overdue obligation after various "conferences" between it and the guarantors. *Id.* at 788. The court reasoned that the four guarantors had "sufficient interest" in the corporation, so that their seeking forbearance on a suit against the corporation was sufficient consideration for the guaranties. *Id.* Thus, whereas mere forbearance may not fulfill the consideration requirement, if forbearance is agreed upon or bargained for, it will suffice as consideration for a guaranty even where the forbearance may not have a direct, immediate effect on the third party guarantor.

■ The Court must decide whether Citibank agreed to forbear from calling the loans or whether the Debtor was bargaining for such forbearance when it executed the guaranties. The Court concludes that the totality of the circumstances leading to the execution of the subsequent guaranties creates a fair and clear inference that Citibank agreed to forbear in consideration for the guaranties and that the Debtor bargained for the forbearance.

First, the Capital Loan Program, under which the Shareholder Loans were extended, was initiated for the benefit of the Debtor. The Debtor negotiated the terms of the Program and required its shareholders to invest the funds they received from the Program directly in the Debtor. In fact, Charles E. Sammons, a shareholder of the Debtor who testified at the hearing, stated that a share-

---

**3.** Citibank also contends that the guaranties were an essential term of Citibank's renewal of a $350,000 promissory note from the Debtor, executed contemporaneously with the Continuing Guaranty. Citibank's Exhibit 18. Although the 350,000 renewal note does refer to the guaranties, there was no evidence or testimony that the renewal of the loan was made in consideration of the Debtor's guaranty of the shareholder loan. Although not itself sufficient consideration to support the guaranties, the contemporaneous execution of this renewal note is relevant evidence in support of the Court's conclusion that the guaranties are enforceable.

holder who did not contribute the loaned funds to the firm faced expulsion. Tr. p. 92, Lines 16–18.

Further, as Mr. Sammons stated at the hearing, the Debtor intended to guaranty the loans from the onset of the Program. Tr. p. 96. The Debtor's Shareholder Agreement states in Paragraph 2.5 that "[t]he Corporation *shall* guarantee each Capital Loan to the financial institution extending such a loan to a Shareholder." (emphasis added) Mr. Sammons stated that one of the shareholders' primary concerns was getting such a provision incorporated in the Shareholder Agreement. Tr. p. 90, Lines 13–14.

The Debtor had a significant stake in Citibank's Loan Program. Thus, it had an interest in maintaining an amicable lending relationship with Citibank, both directly on loans to the firm and indirectly on loans to its shareholders. That relationship would have most certainly ended had the Debtor not agreed to execute the Continuing Guaranty and the May 11, 1995 Letters. Furthermore, had Citibank called the loans in May of 1995, the shareholders would have demanded indemnification under the Shareholder Agreement, a process that would have hurt the Debtor's internal morale and subjected it to liability equal to the amounts it was asked to guaranty. By executing the subsequent guaranties, the Debtor avoided internal strife among its own shareholders, external strife with Citibank, and did not increase its ultimate liability. Although Citibank presented no evidence during the hearing that it expressly agreed to forbear, it can fairly be inferred that the Debtor bargained for and obtained such forbearance by executing the always intended guaranties. In sum, the Court finds sufficient consideration to support the guaranties.

The Trustee raised two issues for the first time in his supplemental brief. First, he argues that Citibank is equitably estopped from setting off the monies at issue because it misrepresented to the Debtor that the loans to the shareholders were fully satisfied at a time when they were not. The Trustee argues that had the Debtor not been misled by this misrepresentation, it would have avoided setoff of its funds by refraining from depositing monies into Citibank. The Court finds insufficient evidence of concealment or misrepresentation by Citibank to rise to the level necessary to trigger equitable estoppel. In addition, the Debtor had no choice but to deposit its funds into the Citibank account because it was required to deposit all funds held in other bank accounts into the Citibank account under an agreement it entered into with Citibank on November 10, 1995. Citibank's Exhibit No. 13.

The Trustee also argues that a setoff would result in a fraudulent transfer avoidable under section 548 of the Bankruptcy Code and Florida law. The Court will not address the merits of a possible § 548 claim since it is beyond the pleadings and evidence presented in this contested matter.

For the foregoing reasons, it is—

**ORDERED** as follows:

1. Citibank's motion for relief from the automatic stay is granted.

2. Citibank may setoff the outstanding indebtedness under the Shareholder Loans against the sum of $46,333.33 on deposit in Debtor's bank account at Citibank.