**UNITED STATES of America**

v.

**Earll and Carol HOLDEN.**

No. 1:99CV240.

United States District Court,
D. Vermont.

July 25, 2000.

Melissa A. D. Ranaldo, Assistant United States Attorney, Office of the United States Attorney, District of Vermont, Burlington, VT, Peter Sklarew, U.S. Department of Justice, Trial Attorney, Tax Division, Washington, DC, for appellant.

Geoffry F. Walsh, Vermont Legal Aid, Inc., Springfield, VT, for appellee.

Jan M. Sensenich, White River Junction, VT, Chapter 13 Trustee.

## MEMORANDUM OF DECISION

MURTHA, Chief Judge.

### I. Background

The District Court has jurisdiction over appeals from final judgments of the Bankruptcy Court. *See* 28 U.S.C. § 158(a). It will not disturb a Bankruptcy Court's findings of fact unless clearly erroneous. *See In re Parrotte,* 22 F.3d 472, 474 (2d Cir. 1994). However, legal determinations are subject to *de novo* review. *Id.; In re Donahue,* 232 B.R. 610, 613 (D.Vt.1999).

The underlying facts as found by the Bankruptcy Court (Conrad, B.J.) are supported by the record and undisputed. *See generally In re Holden,* 236 B.R. 156 (Bankr.D.Vt.1999). For the purpose of determining the instant appeal, the Court sets forth the following relevant facts. On May 23, 1996, debtors Earll and Carol Holden filed a petition for bankruptcy protection under Chapter 13. In their petition, they listed a $193 underpayment of 1992 personal income taxes owed to the Internal Revenue Service ("IRS"). The Chapter 13 plan, as confirmed on September 19, 1996, required the debtors to pay $199 per month to the Chapter 13 trustee, and it provided for full payment of the IRS debt.

In early 1997, the Holdens experienced a temporary reduction in income. By February 1997, they were approximately three months behind in their plan payments. That month the debtors electronically filed their personal income tax return for 1996, claiming a refund of $2,007. The Holdens planned to use part of the refund to become current on their Chapter 13 plan payments.

After several weeks, the debtors inquired as to the status of their refund. An IRS bankruptcy specialist informed them that the agency had placed a "V-freeze" on their refund. Pursuant to established IRS policy, a "V-freeze" is an administrative action whereby the refunds of individuals who have filed for bankruptcy are frozen without adequate notice that the refunds

will not be mailed or instructions on how debtors may gain prompt access to their frozen funds. *See, e.g., In re Burrow,* 36 B.R. 960 (Bankr.D.Utah 1984). At trial, former IRS employee Kenneth Farley admitted that the V-freeze at issue has a two-fold purpose: to stop any collection activity against debtors and to stop any refunds from being forwarded to debtors. *See* 2/5/99 Trial Transcript at 36, 45, 136.

Explanations and protestations of the IRS notwithstanding, the record supports the conclusion that the IRS's ordinary and usual V-freeze policy is arbitrary and acts to circumvent the automatic stay by pressuring a debtor [1] to pay immediately outstanding indebtedness to the IRS. *See* 236 B.R. at 160; *see also* 2/5/99 Trial Transcript at 45 ("If it was a dollar Proof of Claim and $30,000 [refund] claim, it would freeze it regardless."). Furthermore, the IRS freezes funds without apparent regard for the possible impact of court orders; in fact, the agency considers irrelevant that the Bankruptcy Court has entered an order confirming a Chapter 13 plan. *See* Trial Transcript at 47.

The following letter dated March 14, 1997 to debtors' attorney from Nancy Dubicki, Chief, Insolvency Unit II, Department of the Treasury, is illustrative:

Dear Mr. Walsh:

I am writing in response to your March 13, 1997 letter to Mr. Ken Farley. I reviewed your letter and the facts of the case. You have requested that we notify you if your letter does not accurately represent the facts in this case as well as our proposals and action.

Please be advised that your letter does not accurately reflect either our position or our proposal.

Your client is in arrears with the payments of the Chapter 13 plan, and, therefore, subject to a possible dismissal or conversion. Please advise us as to when this default will be corrected. You requested we cite our policy on this matter. It is contained in IRM57(13)3, 142(6): "... (SPF) may refund the overpayment to the debtor despite the outstanding tax liability if the debtor's plan adequately provides for the tax liabilities and the debtor is current."

We repeat our offer to assist in this matter by splitting the debtor's refund. With proper authorization, we could correct the arrears situation by sending part of the refund directly to the trustee to apply to the plan. This would then enable us to issue the remaining refund to the debtor. We would never suggest applying any portion of this refund directly to pre-petition tax liability until the plan is dismissed.

However, at trial Kenneth Farley appeared to contradict Dubicki's last assertion:

Q. With respect to the Proof of Claim, was a freeze imposed on the Holden account because they held a pre-petition debt?

A. Yes.

2/5/99 Trial Transcript at 63. Farley further testified:

Q. Now, in a Chapter 13 case, the freeze is imposed before the Plan is even filed, right?

A. Yes, sir.

Q. And it's also imposed before any payment revenue by a debtor?

A. Yes, sir.

Q. Do you do anything to change the freeze after a Chapter 13 Plan has been filed?

A. No, sir.

Q. Is the freeze code changed in any way after a Chapter 13 Plan has been confirmed by the court?

A. No, sir.

---

**1.** The IRS cites the fact that the debtors have waived allegations of bad faith and coercion specific to this case. That stipulation does not preclude a conclusion, based on the record, that the V-freeze, in general, is coercive in that it requires debtors to take affirmative steps to recover refunds to which they are otherwise entitled.

Q. Is the freeze code changed in any way when the Chapter 13 debtor's Plan is proposing to pay off the IRS claim in full?

A. No, sir. The freeze stays.

Q. And what about when the bankruptcy court confirms a Chapter 13 Plan that is paying off the IRS claim in full? Does anything happen to change the freeze code then?

A. No, sir. The freeze would stay as we originally input it.

2/5/99 Trial Transcript at 46–47.

On March 31, 1997, the debtors filed a complaint seeking monetary damages and injunctive and declaratory relief and alleging, *inter alia*, that the IRS froze their refund in violation of the Bankruptcy Code's automatic stay provisions. On May 13, 1997, the IRS and Holdens executed a stipulation by which the IRS agreed to issue a check for $990.60 to the Chapter 13 trustee to cure the debtors' default under their confirmed plan and to send the balance of the 1996 tax refund directly to the Holdens. On May 19, 1997, the IRS filed a motion to dismiss the Holdens' complaint for failure to state a claim upon which relief can be granted. Suggesting that the IRS is entitled to freeze and setoff, Judge Conrad granted the motion to dismiss.

Finding "the Holdens' complaint raises serious questions regarding the IRS's compliance with the Bankruptcy Code's automatic stay provisions," this Court reversed. *See In re Holden*, 217 B.R. 161, 166 (D.Vt.1997). The parties' pre-trial stipulation substantially narrowed the issues before the Bankruptcy Court. *See* 236 B.R. at 159. After a bench trial, Judge Conrad determined that the IRS had violated 11 U.S.C. §§ 362(a)(3) and (6) and had acted in contempt of the plan confirmation when it froze the Holdens' tax refund. 236 B.R. at 158. The IRS has appealed that decision. For the reasons set forth below, the decision of the Bankruptcy Court is affirmed.

## II. Discussion

### A.

Under 11 U.S.C. § 362(a), the filing of a bankruptcy petition

operates as a stay, applicable to all entities, of—

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; . . . [and]

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . . .

■ The IRS argues that the V-freeze does not constitute control over "property of the estate" and therefore does not violate section 362(a)(3). In a bankruptcy proceeding, "property of the estate" generally includes the debtor's property "as of the commencement of the case." 11 U.S.C. § 541(a)(1). In addition, 11 U.S.C. § 1306(a)(1) includes "all property of kind specified in [section 541] that the debtor acquires after the commencement of the case but before the case is closed . . . ." as "property of the estate." Therefore, "the property of a Chapter 13 bankruptcy estate includes property acquired post-petition." *In re Fisher*, 203 B.R. 958, 960 (N.D.Ill.1997).

As Judge Conrad suggested, if § 1306(a) were the only provision addressing property acquired post-petition, this case would be much simpler because it would automatically render the tax refund at issue property of the estate. *See* 236 B.R. at 160. However, 11 U.S.C. § 1327(b) provides: "Except as otherwise provided in the plan or in the order confirming the plan, the confirmation of a plan vests all of the property in the estate of the debtor."

Judge Conrad considered several lines of cases which seek to reconcile the apparent anomaly caused by the interplay of sections 1306(a) and 1327(b) and concluded:

[U]pon confirmation of a Chapter 13 plan, all property of the estate is emp-

tied from the estate and revested in the Debtors under § 1327(b). Such property is no longer property of the estate. Immediately after confirmation, the estate begins to be refilled by property acquired by Debtors post-confirmation. That property is protected by the automatic stay and remains so until the case is closed, converted, or dismissed.

236 B.R. at 162.

■ The Court agrees with this conclusion. This interpretation comports with the plain meaning of the statutes and "reconciles the rest of the governing statutes without contradicting the language of any provision." *In re Fisher*, 203 B.R. at 964. It also comports with the policies of affording a debtor protection from harassment and of providing an orderly procedure for dealing with creditors. *See United States v. Norton*, 717 F.2d 767, 770–71 (3d Cir. 1983). Therefore, the Bankruptcy Court correctly concluded that the Holdens' refund was property of the estate and the unauthorized control the IRS exercised over the property by virtue of placing its V-freeze violated 11 U.S.C. § 362(a)(3). *See* 236 B.R. at 165.

### B.

■ The IRS's argument also maintains the V-freeze constituted the exercise of a permissible right of setoff, and therefore did not constitute an act toward collecting a pre-petition debt in violation of 11 U.S.C. § 362(a)(6). In relevant part, 11 U.S.C. § 553(a), which addresses setoff rights, provides:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case and under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

Accordingly, "[s]ection 553 only permits setoff of mutual pre-petition debts. It

does not permit a creditor to collect a pre-petition debt by withholding payment of a post-petition debt owed to the debtor." *In re Ruiz*, 146 B.R. 877, 879 (Bankr.S.D.Fla. 1992). Here, that is exactly what the IRS did. The Holdens' tax debt accrued in tax year 1992. They filed their petition for bankruptcy on May 23, 1996. The IRS then held their overpayment refund in February 1997. It did not seek permission from the Bankruptcy Court to allow it to take such action. *See In re Parr Meadows Racing Assoc. Inc.*, 880 F.2d 1540, 1545 (2d Cir.1989), *cert. denied*, 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990) (The automatic stay prevents "disparate actions against debtors. . . .") Through its freeze, the IRS did what no other creditor could do: it guaranteed payment of a pre-petition debt by withholding payment of a refund owed to the debtor. *See In re Ruiz*, 146 B.R. at 880 ("While setoff under 553 is limited to instances involving mutuality of obligation, the doctrine of recoupment simply requires the claims to arise from the same transaction, and that the amounts recouped *not exceed the amount of the original sum owed.*") (emphasis added); *see also In re Chateaugay Corp.*, 94 F.3d 772, 781 (2d Cir.1996) (suggesting "the IRS cannot conduct its setoff procedures without the permission of the bankruptcy court. . . ."). In short, the IRS's freeze, open-ended in time and excessive in scope, constituted a forbidden self-help scheme which violates the automatic bankruptcy stay. *See United States v. Reynolds*, 764 F.2d 1004 (4th Cir.1985); *see also Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) (under certain circumstances, the "temporary" withholding of payment of a debt that a creditor owes to a debtor may not violate the automatic stay); *cf. In re Tillery*, 179 B.R. 576 (Bankr.W.D.Ark. 1995) (IRS moved for relief from stay after imposing administrative freeze on refund).

### C.

■ "The provisions of a confirmed plan bind the debtor and each creditor,

whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). As any other creditor, the IRS was bound by the provisions of the confirmed plan. Accordingly, its imposition of a V-freeze constituted contempt of the Holdens' Chapter 13 Plan Confirmation Order.

In this regard, the IRS has argued:

Here, the Holdens' undisputed failure to make six of their first seven monthly plan payments to the Trustee as of March 13, 1997 gave the United States the right to move for dismissal or conversion to Chapter 7 pursuant to § 1307(c). Moreover, arrearages of this duration are hardly tolerated, at least absent a showing that the default will be cured.... Accordingly, the IRS had a right of setoff, although its exercise was contingent upon the entry of an appropriate court order. But that was also true of the prepetition setoff right protected by § 553 that was at issue in *Strumpf [Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995)], the exercise of which was contingent on the entry of an order-one under § 362(d) modifying the stay prohibiting setoff under § 362(a)(7).

Brief of the United States (paper 23) at 24 (citations and footnote omitted).

This sophistry contains the crux of the problem in this case. After imposing the V-freeze, the IRS did not move for dismissal or conversion. It had no apparent intention of promptly approaching the Bankruptcy Court "for entry of an appropriate court order." The V-freeze was of uncertain duration, not the temporary measure addressed in *Strumpf*. It was excessive in that it also encompassed funds to which the IRS had no credible claim of entitlement. Its practical effect was to force the debtors to consent to full payment of a prepetition debt outside the parameters of the confirmed plan. Without question, if any entity other than the IRS took similar measures, it would be deemed unlawful.

## D.

■ The Bankruptcy Court did not explicitly address the availability of awarding emotional distress damages before it awarded the debtors $7000 in accordance with the parties' pretrial stipulation. The IRS argues such damages are unavailable in this case.

"An individual injured by any willful violation of a stay provided by [section 362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). The Second Circuit has set forth the standard governing the imposition of sanctions pursuant to § 362(h) as follows:

[W]e find persuasive the reasoning adopted by the other circuits and conclude that any deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages. An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages pursuant to 11 U.S.C. § 362(h). This standard encourages would be violators to obtain declaratory judgments before seeking to vindicate their interests in violation of an automatic stay, and thereby protects debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations.

*In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir.1990).

In any other context, compensation for pain, suffering and mental anguish is available as "actual damages." The Bankruptcy Court's award of $7000 stipulated damages for mental anguish is affirmed. *Fleet Mortgage Group, Inc. v. Kaneb*, 196 F.3d 265, 270 (1st Cir.1999).

### III.   Conclusion

The Judgment of the Bankruptcy Court is AFFIRMED.

SO ORDERED.